910 P.2d 342

**Barbara A. IRWIN, Petitioner–Appellee,**

v.

**Charles Douglas IRWIN, Respondent–Appellant.**

**No. 14216.**

Court of Appeals of New Mexico.

Dec. 21, 1995.

Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, for Respondent–Appellant.

David F. Richards, Van Soelen, Greig & Richards, P.A., Clovis, Cynthia A. Fry, Albuquerque, for Petitioner–Appellee.

## OPINION

DONNELLY, Judge.

1. Respondent (Husband) appeals from the trial court's division of community property and allocation of community debts in a divorce action. We address Husband's claims that (1) the trial court failed to apportion the community property equally between the parties, and (2) the trial court erred in failing to value and apportion properly the survivor's benefit provisions of Husband's state educational retirement plan. For the reasons discussed herein, we reverse.

## FACTS

2. In August 1988 Husband and Petitioner (Wife) permanently separated after a marriage of almost thirty years. Wife filed for divorce from Husband on January 31, 1989. Upon motion of Husband, the trial court entered an interim order on April 25, 1991, dissolving the marriage of the parties but expressly reserving jurisdiction to decide all other issues, including the division of community property, division of community indebtedness, and Wife's request for an award of alimony.

3. At the time of the divorce, Husband was a retired professor from Eastern New Mexico University (ENMU), aged fifty-six, and Wife was a real estate agent, aged fifty-four. On February 20, 1992, the New Mexico Educational Retirement Board (Board) moved to intervene in the divorce proceedings, alleging that the Board "has an interest relating to the division, disposition, alteration and distribution of educational retirement benefits" of Husband and that the Board's interest was not "adequately represented by [the] existing parties." Thereafter, an order allowing intervention was entered by the trial court.

4. Following a hearing on July 16, 1991, the trial court entered findings of fact and conclusions of law, an order, and a supplemental order apportioning the community property and community debts between the parties. The trial court found, among other things, that Husband was employed at ENMU from August 1963 through May 13, 1988; that he earned 26.92 years educational retirement credit with the Board during his marriage; that the retirement benefits were entirely community property; and that such benefits should be equally divided between the parties. The trial court also found:

12. On or about March, 1989, [Husband] falsely and without the consent of [Wife] represented himself to be a single man to the New Mexico Educational Retirement Board and made an election of benefit that pays him alone a monthly benefit of $2,499.49 until his death with nothing payable to [Husband's] Beneficiary, his son . . ., except the residual of his last

monthly benefit or the balance of contributions if any, whichever is greater.

13. Since July 1, 1988, through August 1, 1991, [Husband] has received retirement income in his name alone in the total amount of $94,984.62.

14. [Husband] has paid to [Wife] from the retirement benefits he has received, a total of $25,714.16 which leaves a sum withheld from [Wife] in the amount of $21,776.15 which would represent the balance of her 50% interest in [Husband's] retirement income.

15. Under Option "B" of the Retirement Benefit Plan ... [Husband] would receive a benefit of $1,932.61 with a like benefit to [Husband's] survivor. Had [Wife] an opportunity to participate in the selection of the Retirement Benefit as required by the ... Board and of which she was fraudulently deprived by [Husband], [Wife] would have selected Option "B".

5. The trial court ordered that both Husband and Wife receive fifty percent of the gross benefits or contributions accrued in Husband's name and that Husband should be ordered to refund to the Board approximately $14,000, representing the difference between the option "B" retirement benefit amount and the straight-life benefit amount Husband received since the date of his retirement.

6. Based on its finding, the trial court ordered that Husband re-elect retirement benefit option "B," so that Husband would receive a monthly retirement benefit of $2,169.31 with a like monthly benefit payable as survivor benefits to Wife. In accordance with the trial court's order, the Board began dividing payments of Husband's monthly retirement benefits so that fifty percent of the gross benefits are payable to each party.

7. In making its allocation of community assets, the trial court also found that the parties earned the following amounts during the years listed:

| | 1988 | 1989 | 1990 | 1991 |
|---|---|---|---|---|
| Wife | $ 6,244.27 | $ 9,842.39 | $ 6,000.00 | $ 4,000.00 |
| Husband | $33,787.09 | $46,257.15 | $44,347.92 | $29,567.36 |

Based in part on the above finding, the trial court ordered that Wife should be awarded $69,696.08 as a fifty-percent community interest in Husband's earnings for the period of August 1988 to the date of divorce in 1991.

## I. APPORTIONMENT OF COMMUNITY PROPERTY

■ 8. Husband contends that the trial court erred in awarding Wife fifty percent of his earnings during the period of their separation and covering the time period from August 1988 to April 25, 1991, when their marriage was dissolved. Husband argues that earnings spent by either spouse prior to dissolution of their marriage, and which are no longer in existence, may not be categorized as community assets subject to distribution between the parties. The trial court found, and Husband does not dispute, that he earned $139,392.16, and Wife earned $26,086.66 during the period in question. It is also undisputed that each party spent his or her own earnings during the separation, and that no portion of such income remains either in the form of unexpended funds or other assets.

9. The parties gave conflicting testimony concerning how they spent their respective earnings during the period of their separation. Husband testified that he spent approximately $95,500 of his earnings on the payment of various community debts and the balance on living expenses, and that no part of the funds are currently remaining. Husband argues that both he and Wife had the unrestricted use of their respective incomes after their separation and continuing until the time their marriage was dissolved. He asserts that they paid their living expenses and had community debts consisting of, among other things, expenses in connection with community rental property. Husband also contends he used his earnings to pay taxes, to make payments on the residence occupied by Wife, to make monthly payments on rental property owned by the community, to pay utility bills, and to pay gasoline and auto insurance for Wife's car. Wife disputes Husband's claims concerning the amounts expended by him on behalf of the community following their separation and testified that Husband spent only approximately $51,900 of his total earnings for the payment of community debts, including income taxes.

10. Under New Mexico law the trial courts are required in divorce proceedings to divide the community property equally. *Foutz v. Foutz,* 110 N.M. 642, 644, 798 P.2d 592, 594 (Ct.App.1990). The division of property, however, need not be computed with mathematical exactness. *See Ridgway v. Ridgway,* 94 N.M. 345, 346, 610 P.2d 749, 750 (1980); *Bustos v. Gilroy,* 106 N.M. 808, 813, 751 P.2d 188, 193 (Ct.App.1988). In order to apportion the community property equitably between the parties, the trial court must determine the extent and value of the community property and then deduct the amount of any community indebtedness. NMSA 1978, § 40–3–11 (Repl.Pamp.1994). In performing this function, the community property, including personalty, should be valued according to its fair market value at the time of the dissolution of marriage. *Madrid v. Madrid,* 101 N.M. 504, 505, 684 P.2d 1169, 1170 (Ct.App.1984).

11. The trial court, in dividing the community property, assigned to Husband as an award of property the sum of one-half of $139,392.16 (or $69,696.08) as representing "Wife's community interest in [H]usband's earnings 1988–1991 (50%)," covering the period of their separation prior to the dissolution of their marriage. Husband argues that the trial court, in making its distribution of community property, erred in awarding $69,696.08 of nonexistent funds to him and then awarding Wife an equal amount of existing community property in an attempt to equalize the distribution between the parties. Husband also notes that the trial court did not similarly award Wife the amount of her expended community earnings during the same period and then award him community property of equal value. Neither party argues on appeal that Husband's income during the period of their separation was utilized to acquire other assets which were actually available for distribution at the time of divorce, nor that Husband's disposition of such earnings was contrary to a court order. Nor did the trial court find that Husband violated any fiduciary responsibility to Wife concerning the disposition of his earnings during the separation of the parties.

12. Wife asserts that the trial court's allocation of community assets and the award of Husband's earnings to him during their separation, with a corresponding award of other assets to her, was correct because during coverture each spouse has a present vested interest in half of all the community property, including community income, and she was deprived of the use of one-half of this income. *See DeTevis v. Aragon,* 104 N.M. 793, 798, 727 P.2d 558, 563 (Ct.App.1986) (earnings attributable to labor and talent of spouses during marriage are community property); *Hakkila v. Hakkila,* 112 N.M. 172, 182, 812 P.2d 1320, 1330 (Ct.App.), *cert. denied,* 112 N.M. 77, 811 P.2d 575 (1991).

13. Wife is correct that under New Mexico community property law each spouse has a one-half ownership interest in all community income or community assets acquired during the marriage. Under NMSA 1978, Section 40–3–14(A) (Repl. Pamp.1994), either spouse has the power "to manage, control, dispose of and encumber the entire community personal property." *See also Herrera v. Health & Social Servs.,* 92 N.M. 331, 335, 587 P.2d 1342, 1346 (Ct. App.), *cert. denied,* 92 N.M. 353, 588 P.2d 554 (1978). But once community personal property or earnings are expended, rather than being converted into an asset, there is no community asset to be shared or managed, and the spouse making the expenditure has no duty to reimburse the community absent some special circumstance such as violation of a court order or breach of a fiduciary duty to the other spouse. *See Dorbin v. Dorbin,* 105 N.M. 263, 268, 731 P.2d 959, 964 (Ct.App. 1986); *Roselli v. Rio Communities Serv. Station, Inc.,* 109 N.M. 509, 514, 787 P.2d 428, 433 (1990) (each party has power to manage and dispose of community's personal property, subject to fiduciary duty to other); *Lohbeck v. Lohbeck,* 72 N.M. 78, 79, 380 P.2d 825, 825 (1963) (entry of restraining order limits a spouse's authority to dispose of community property during pendency of divorce).

14. Once the monies have been expended, such funds no longer constitute community assets subject to distribution on dissolution of the marriage. Here, there was no showing that the disposition of either spouse's

earnings or the monies withdrawn from the credit union account during the period of their separation was contrary to any court order or violated a fiduciary duty owed by one party to the other. Indeed, it is undisputed that a substantial portion of Husband's earnings and other funds was applied to the payment of community debts and obligations. Hence, we conclude that the trial court erred in making its apportionment of community assets by awarding Husband funds which no longer existed and then allowing Wife an offsetting award out of other existing community property.

## II. *TREATMENT OF SURVIVOR'S PENSION BENEFITS*

■ 15. Husband also argues that the trial court erred in denying his request to apportion the distribution of Husband's pension in order to take into consideration the difference in the parties' respective life expectancies and the value of the survivor's benefit provision in the state educational retirement plan awarded to Wife. No New Mexico appellate decision has squarely addressed this issue.

16. Husband asserts that because his pension is fully vested and matured, and Wife, at the time of divorce, had a greater life expectancy (twenty-one years) than his (seventeen years), the trial court erred in awarding each party one-half of the monthly distribution of such pension. He reasons that instead of giving each party one-half of the monthly pension payment, the amount awarded to Wife should have been adjusted in order to take into consideration the fact that according to statistical probabilities, Wife has a greater life expectancy than he, and because the trial court ordered him to give Wife the survivor's benefit option under the retirement plan, this will result in Wife receiving during her lifetime a greater portion of such pension benefits than Husband.

17. Husband contends that the survivor's benefit provision under the retirement plan is a valuable feature of the plan and the value of the survivor's benefits must be factored into the trial court's community property distribution formula. Stated another way, he argues that because of the differences in

their ages, according to the mortality tables, there is a mathematical probability that Wife will outlive him, and, because the trial court ordered Husband to designate Wife as his beneficiary in the event of his death, Wife will continue to receive a portion of Husband's pension for the remainder of her life and will receive a greater portion of the total earned community pension benefits. *See* NMSA 1978, § 22–11–29(A)(1) (Repl. Pamp.1993).

■ 18. Wife's response to Husband's claim relies in part on this Court's decision in *Ruggles v. Ruggles,* 114 N.M. 63, 834 P.2d 940 (Ct.App.1992) (*Ruggles I* ), *rev'd,* 116 N.M. 52, 860 P.2d 182 (1995). *Ruggles I,* in accord with our Supreme Court's decision in *Schweitzer v. Burch,* 103 N.M. 612, 711 P.2d 889 (1985), held, inter alia, that unless the parties agree otherwise, the trial court in a divorce proceeding must apportion the community interest in a spouse's retirement plan on a " 'pay as it comes in' basis." *Ruggles I,* 114 N.M. at 68, 834 P.2d at 945. We note, however, that *Ruggles I* was subsequently reversed by our Supreme Court. Under the latter decision the trial court in dividing community assets, including a community pension, should award the nonemployee-spouse a lump-sum of cash or other property equal to the value of the nonemployee's interest in the plan, *or* in exceptional circumstances the court may order that the nonemployee-spouse be paid a monthly amount equal to his or her share of the pension as it is received. *Ruggles v. Ruggles,* 116 N.M. 52, 67, 860 P.2d 182, 197 (1993) (*Ruggles II* ). The trial court here chose the latter method of distribution. As observed in *Ruggles II,* the preferred method of dealing with community interests in a retirement plan, when such benefits are vested or matured at the time of dissolution of marriage, is to value, divide, and distribute them in lump sum or other equivalent distribution at the time of dissolution. *Id.* at 54, 860 P.2d at 184. However, if this method of division is not practicable, the trial court may utilize other methods of distribution. *Id.* Neither *Ruggles II* nor the cases discussed therein, however, specifically addressed the issue of the community interest in a survivor's benefit provision as presented here.

19. As observed by the intervenor Board, the effect of the trial court's order directing Husband to name Wife as the person entitled to the survivor's benefit option under the retirement plan will result in a lowering of the monthly retirement benefits which are payable during Husband's lifetime, but, assuming that Wife survives him, will result in her receiving a monthly pension payment during the remainder of her lifetime. Section 22–11–29(A)(1).

20. A community interest in a pension plan containing a survivor's benefit provision constitutes a valuable portion of the community assets, and the survivor's benefit provision should be considered in valuing and distributing the community interest in the retirement plan. *Ruggles II*, 116 N.M. at 65 n. 13, 67 n. 17, 860 P.2d at 195 n. 13, 197 n. 17 (court should consider the effect of any death benefit on the present value of the retirement plan). *See generally Copeland v. Copeland*, 91 N.M. 409, 413, 575 P.2d 99, 103 (1978) (value of community interest in retirement benefit plan is property subject to division).

21. Wife also argues that the trial court's distribution and apportionment of the pension rights should be upheld because the trial court found that Husband improperly represented to the Board that he was a single man so as to deprive her of the survivor's benefit option. Wife is correct that where an employee-spouse has a choice of pension options, he or she should not be permitted by the choice of such options to defeat or reduce the interest of the nonemployee-spouse. *See In re Marriage of Stenquist*, 21 Cal.3d 779, 148 Cal.Rptr. 9, 582 P.2d 96, 100 (1978) (en banc) (spouse should not, by invoking condition within his or her control, be permitted to defeat community interest of other spouse). Here, the trial court ordered Husband to revoke his prior exercise of a retirement option which would have eliminated Wife's right to survivor's benefits. Husband was ordered to name Wife as his survivor under the retirement plan, and he was ordered to repay the Board out of his share of the community property the amount necessary to implement Wife's right to receive survivor's benefits under the

plan. The record indicates that Husband subsequently complied with this order. In order to properly allocate the community assets of the parties, the trial court is required to fully determine the value of the retirement plan, including the value of the survivor's benefit provision, and to consider such value in apportioning each party's share of the total retirement benefits.

22. In sum, we hold that in situations such as those existing here where the community interest in the pension is fully vested and matured, the trial court should value the retirement benefits as a whole, including the value of the survivor's benefit provision of the retirement plan, in order to fully and fairly apportion each party's share of the retirement benefits. *Ruggles II*, 116 N.M. at 67 n. 17, 860 P.2d at 197 n. 17. *See generally* Murray Projector, *Valuation of Retirement Benefits in Marriage Dissolutions*, 50 L.A.B.Bull. 229, 233–34 (Apr.1975).

*CONCLUSION*

23. The cause is remanded and the trial court is directed to modify its division of community property and allocation of the community indebtedness consistent with the principles discussed herein. The parties shall bear their own costs and attorney's fees on appeal.

24. IT IS SO ORDERED.

APODACA, C.J., and HARTZ, J., concur.

HARTZ, Judge (concurring).

I join fully in Judge Donnelly's opinion. I write only to point out that under *Ruggles II* it would often not be necessary to require the spouse who earned the pension to choose any particular method of receiving benefits. When one spouse has a vested, matured interest in a pension fund, the court would ordinarily award the nonemployee-spouse a lump sum of cash or other property equal to the value of the nonemployee's interest in the fund. In that event, it would not matter whether the employee-spouse elected an option that included a survivor's benefit.