2006-NMCA-042

131 P.3d 696

**Jose S. MEDINA, Petitioner–Appellee,**

v.

**Rachael R. MEDINA, Respondent–Appellant.**

No. 25,584.

Court of Appeals of New Mexico.

Feb. 28, 2006.

310

Cusack, Jaramillo & Associates, P.C., Timothy J. Cusack, Roswell, NM, for Appellee.

Ramon I. Garcia, Roswell, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} This divorce case requires us to decide whether the trial court erred in refusing to award Wife any portion of Husband's retirement benefits for the period following her bigamous marriage to another man. We hold that the mere fact of bigamy is insufficient to deprive Wife of her share of community property. We determine that a bigamous spouse should be deprived of his or her community property rights only when the circumstances of the case shock the conscience of the court, and we remand for the trial court to make additional factual findings and reconsider the issue.

## FACTS

{2} Jose Medina (Husband) and Rachael Medina (Wife) were married on May 14, 1993. They lived together for some period of time, although the parties dispute their date of separation. Husband alleges that they separated in 1997, while Wife alleges that they separated in 2003. The trial court specifically declined to make a factual finding regarding the date of the parties' separation. In 2003, Husband filed for divorce.

{3} At trial, Wife testified that she married a man named Paul Orozco at a ceremony in Colorado on September 22, 1999, while she was still legally married to Husband. Before marrying Orozco, Wife applied for a marriage license. On the application, she used a fictitious name, birth date, and social security number. Wife also checked the box on the application marked "widowed" and indicated that her previous husband had died in New Mexico in 1992. Orozco was ill at the time of the marriage, and he died on October 21, 2002.

{4} The trial court did not enter findings regarding whether Wife ever lived with Or-

ozco. The trial court's findings also do not indicate when Husband and Wife lived together between Wife's marriage to Orozco in 1999 and Husband's filing for divorce in 2003. However, it appears that the parties may have lived together at least sporadically during this time. There is also an ongoing factual dispute regarding when Husband became aware of Wife's marriage to Orozco. Wife argues that Husband found out about the marriage two weeks after it occurred, and she states that at the very least, he was aware of it by 2000. Husband alleges that he had some suspicions regarding the marriage in 2000, but that he "was not able to absolutely confirm the fact of a bigamous marriage" until Orozco's sister testified regarding the marriage at trial. The trial court did not make any findings with respect to Husband's knowledge of the marriage to Orozco.

{5} At trial, Husband argued that Wife should not receive a share of his retirement benefits for the period during which she was married to Orozco. The trial court ruled that Wife's entitlement to the benefits would be terminated as of the date of her marriage to Orozco, and Wife appeals only that ruling.

## STANDARD OF REVIEW

{6} We review de novo whether there should be any circumstances, beside the fact of bigamy, relevant to the determination of whether a bigamous spouse should lose his or her share of community property. *See State ex rel. Children, Youth & Families Dep't v. Maria C.*, 2004–NMCA–083, ¶ 17, 136 N.M. 53, 94 P.3d 796 ("We review issues of law de novo.").

## DISCUSSION

### 1. General Rules Concerning Bigamy

{7} Many states have statutes characterizing bigamous marriages as void ab initio. *See, e.g.,* Cal. Fam.Code § 2201 (1992); Ind. Code § 31–11–8–2 (1997); R.I. Gen. Laws § 15–1–5 (1999); S.C.Code Ann. § 20–1–80 (1990); S.D. Codified Laws § 25–1–8 (1939); Va.Code Ann. § 20–43. New Mexico does not appear to have such a statute, although our state does make bigamy a criminal offense. *See* NMSA 1978, § 30–10–1 (1963). Colorado, however, has a statute mandating that a court shall declare a bigamous mar-

riage invalid from its inception. Colo.Rev. Stat. Ann. § 14–10–111(1)(g)(I), (5) (1998). In New Mexico, the validity of a marriage is governed by the law of the jurisdiction in which the marriage was celebrated. *In re Estate of Bivians*, 98 N.M. 722, 726, 652 P.2d 744, 748 (Ct.App.1982). Thus, because Wife's marriage to Orozco is invalid under Colorado law, it is also invalid in New Mexico and does not operate to nullify her marriage to Husband.

{8} However, the fact that a bigamous marriage does not technically nullify a prior marriage does not necessarily mean that the second marriage has no legal effect on the first marriage and its incidents. Many courts, under circumstances which we will discuss below, have applied a theory of estoppel or unclean hands to similar cases involving bigamy. We agree that under some circumstances, a bigamous spouse should be precluded from reaping the benefits of his or her first marriage. Before examining this issue, we address the proposition that a second, bigamous marriage should automatically deprive a spouse of his or her share of the community's assets.

### 2. The Mere Fact of Bigamy Does Not Deprive a Spouse of Community Property Rights

{9} In support of her argument that bigamy alone is not sufficient to deprive a spouse of community property rights, Wife relies on *Beals v. Ares*, 25 N.M. 459, 185 P. 780 (1919), which we find helpful. In *Beals*, our Supreme Court considered whether a wife "forfeit[ed] her interest in the community property by the commission of adultery." *Id.* at 494, 185 P. at 791. The Court first stated that under the civil laws of Spain and Mexico, a wife did forfeit her "matrimonial gains" when she committed adultery. *Id.* at 478, 185 P. at 785. The Court then noted that when New Mexico passed a statute adopting the common law, the civil law was completely supplanted and the common law became "the rule of decision." *Id.* at 460, 185 P. at 781 (Syllabus by the Court). After examining the common law involving a wife's property rights, the Court stated as follows:

There being no applicable provisions of the common law, or any statute of this state barring the wife of her interest in the community property by reason of the commission of adultery, we conclude that her rights and interests in the community property are not affected by any wrongs which she may have committed, however grievous they may have been. As the legislature has not seen fit to deprive her of the interest which it conferred upon her, in the property earned by the parties to the union, because she may have violated her marital vows, the courts can not legislate upon the subject and by judicial fiat correct that which many think is a serious defect in our laws. The remedy is with the legislature and not the courts.

*Id.* at 494, 185 P. at 791.

{10} The most logical rationale for a holding that bigamy automatically deprives a spouse of community property rights would be that the spouse forfeits those rights as a result of his or her misconduct. We note that some jurisdictions appear to have distinguished cases like *Beals* from cases involving bigamy. *See In re Estate of Anderson*, 60 Cal.App.4th 436, 70 Cal.Rptr.2d 266, 271 (1997) (distinguishing case that held adultery insufficient to forfeit marital inheritance rights from case involving bigamy as well as other circumstances calling for an equitable resolution). However, we agree with Wife that *Beals* stands for the proposition that a spouse does not forfeit community property rights merely by engaging in misconduct relative to the marriage.

▮ {11} Marriage is a civil contract that confers a certain status upon the parties. New Mexico does not recognize common law marriage. *Lozoya v. Sanchez*, 2003–NMSC–009, ¶ 24, 133 N.M. 579, 66 P.3d 948. Thus, a marriage is valid only if it is "formally entered into by contract and solemnized before an appropriate official." *Id.* (internal quotation marks and citation omitted). Similarly, if parties want to alter their marital status, they must initiate and complete legal proceedings. We note that even in jurisdictions that do recognize or have recognized common law marriage, the concept of "common law divorce" has been consistently rejected, and

courts have required legal proceedings to alter the marital status. *See, e.g., Wilkins v. Wilkins*, 137 Idaho 315, 48 P.3d 644, 649 (2002) ("Once parties agree or consent to marry and consummate the marriage by mutual assumption of marital rights, duties and obligations, their subsequent actions cannot defeat the marriage, because there is no common law divorce."); *In re Estate of Newton*, 65 Ohio App.3d 286, 583 N.E.2d 1026, 1027 (1989) ("While Ohio law accepts the concept of a common-law marriage, it has no counterpart in a common-law divorce."); *Villegas v. Griffin Indus.*, 975 S.W.2d 745, 750 (Tex.App.1998) ("Informal marriages, like ceremonial marriages, can only be dissolved by legal proceedings decreeing annulment or divorce, or by the death of one spouse."); *see also In re Estate of Weems*, 258 Iowa 711, 139 N.W.2d 922, 924 (1966) ("[W]e know of no such thing as a common law divorce, or divorce resting on nothing more secure than bigamy."). Thus, the general rule is that until spouses obtain a final, judicial order dissolving their marriage or ordering a legal separation, *see* NMSA 1978, § 40–3–8(A)(2) (1990) (defining separate property to include property acquired after a legal separation), they retain all the legal benefits and obligations of the marital status, including the presumption that all property acquired during the marriage is community property. *See* NMSA 1978, § 40–3–12(A) (1973) (stating that property acquired by either spouse during marriage is presumed to be community property). For these reasons, we cannot agree with Husband that the mere fact of bigamy causes a de facto divorce, thereby depriving the parties of the benefits of their marriage.

▮ {12} At oral argument, Husband argued that *Beals* is inapplicable because bigamy, unlike adultery, is a criminal offense. *See* § 30–10–1. We do not find this argument persuasive. Other criminal acts that adversely affect the marital relationship, such as domestic violence, do not result in a forfeiture of community property rights. Rather, the general rule is that such property rights are affected only when one spouse has taken some unilateral action to improperly dissipate or otherwise damage the commu-

nity's property. In such cases, that spouse can be required to compensate the other spouse for the improperly used resources. *See, e.g., Roselli v. Rio Cmtys. Serv. Station, Inc.,* 109 N.M. 509, 514, 787 P.2d 428, 433 (1990) (noting that "absent intervening equities, a gift of substantial community property to a third person without the other spouse's consent may be revoked and set aside for the benefit of the aggrieved spouse"); *Fernandez v. Fernandez,* 111 N.M. 442, 446, 806 P.2d 582, 586 (Ct.App.1991) (citing *Roselli* and noting that under such circumstances, it would also be reasonable to "allow the spouse the option of recouping his or her community share of the gift from the spouse who made the gift"); *see also Irwin v. Irwin,* 121 N.M. 266, 269–70, 910 P.2d 342, 345–46 (Ct.App. 1995) (noting that no duty to reimburse arises where one spouse makes expenditures from community funds during marriage, as long as there has been no breach of the fiduciary duty owed to the other spouse).

{13} We also agree with Wife that to inject an element of moral fault into the rules governing the distribution of community property on divorce might be inconsistent with New Mexico's system of no-fault divorce. *See* NMSA 1978, § 40-4–1(A) (1973) (stating incompatibility as a ground for divorce); *State ex rel. DuBois v. Ryan,* 85 N.M. 575, 577, 514 P.2d 851, 853 (1973) (noting that where incompatibility is the ground on which divorce is sought, "[m]isconduct, fault or blame is of no significance"). *Cf. Foutz v. Foutz,* 110 N.M. 642, 644, 798 P.2d 592, 594 (Ct.App. 1990) (noting that alimony is not a punishment and whether a spouse has taken a paramour is irrelevant to alimony determination).

{14} Finally, we recognize that when our Legislature has wanted to make fault relevant to the disposition of community property, it has done so. For example, NMSA 1978, § 45-2–102(B) (1975) provides that the surviving spouse of an intestate decedent ordinarily receives the portion of the community property over which the decedent could have exercised testamentary power. But NMSA 1978, § 45-2–803(B) (1995) mandates that anyone who feloniously and intentionally kills a decedent forfeits any benefit the per-

son would have received under the intestate succession statute. Thus, if bigamy is to automatically deprive a spouse of community property rights, that is a decision best made by the Legislature.

{15} In accordance with *Beals* and New Mexico's preference for removing the element of moral fault from issues involving marital property division, we hold that a spouse does not automatically forfeit his or her community property rights upon the commission of bigamy. Thus, we remand this case for further consideration because the trial court's written ruling and oral comments indicate that the court did make its ruling based on the mere fact of bigamy. We now turn to our examination of when a spouse's bigamy might preclude him or her from claiming the benefits of a prior marriage.

## 3. Estoppel and Unclean Hands as Applied in Cases Involving Bigamy

{16} As a preliminary matter, we address Wife's assertion that Husband has failed to preserve his arguments regarding estoppel because he did not argue on that theory in the trial court. We reject Wife's assertion for three reasons. First, an appellee is generally not required to preserve arguments that support the trial court's decision because we will affirm if the trial court was right for any reason. *Piano v. Premier Distrib. Co.,* 2005–NMCA–018, ¶ 17, 137 N.M. 57, 107 P.3d 11. Second, although Husband may not have used the word "estoppel" in arguing that Wife's bigamy precluded her receiving property acquired after her bigamous marriage, he was invoking a trial court ruling in the nature of estoppel or equity. *Cf. State v. Ross,* 1996–NMSC–031, 122 N.M. 15, 22–23, 919 P.2d 1080, 1087–88 (1996) (holding that objection to hearsay on the ground that it violated constitution and due process was sufficient to raise Confrontation Clause of Sixth Amendment issue). Third, although evidence of some facts relevant to the estoppel question was adduced below, Husband prevailed on the basis of only one fact, that of the bigamous marriage. In our analysis below, we determine that factual matters regarding the parties' knowl-

edge and conduct subsequent to the bigamous marriage are relevant to the question of whether Wife should be deprived of some of the benefits of the marriage. In these circumstances, it is appropriate to remand for the trial court to find the facts related to these issues. *See City of Carlsbad v. Grace*, 1998–NMCA–144, ¶¶ 27, 38, 126 N.M. 95, 966 P.2d 1178 (holding, in a case in which the trial court ruled on the basis of the statute of limitations, but in which this Court held that equitable recoupment might apply, the remedy was to remand for the trial court to weigh the various equitable factors and to also consider an award of interest notwithstanding the lack of a specific argument on the interest issue).

{17} Husband argues that Wife should be estopped from claiming what would otherwise be her share of his retirement benefits on the basis that she knowingly entered into a bigamous marriage with Orozco. In support of his arguments, Husband cites a number of out-of-jurisdiction cases, which we have separated into three categories below.

{18} We first address a line of cases cited by Husband in which a spouse was estopped from escaping support obligations or avoiding distribution of property on divorce by arguing that his or her current marriage was bigamous and void. Many of these cases involved irregularities in the prior divorce proceedings of one of the spouses that called the validity of the prior divorce into question. *See Spellens v. Spellens*, 49 Cal.2d 210, 317 P.2d 613, 615, 619 (1957) (in bank) (holding that the husband was estopped from denying validity of marriage on grounds that the wife's prior divorce was not final at time of marriage when the husband knew of these circumstances and assured the wife that marriage would be valid); *State ex rel. Howell v. Howell*, 818 S.W.2d 704, 707–08 (Mo.Ct.App. 1991) (holding that the husband was estopped from denying the validity of his own prior divorce in order to avoid obligations to his second wife); *Heuer v. Heuer*, 152 N.J. 226, 704 A.2d 913, 915, 919–20 (1998) (holding that the husband was estopped from avoiding obligations by challenging the wife's prior divorce where the husband knew of prior divorce, but apparently had no reason to

question its validity, and held himself out as married to the wife for almost twelve years). *See also Yun v. Yun*, 908 S.W.2d 787, 790–91 (Mo.Ct.App.1995) (holding that the husband was estopped from attempting to shirk his obligations by denying validity of marriage based on lack of a proper marriage license where the husband held himself out as married and reaped all the benefits of the marriage).

{19} We do not agree with Husband that these cases are relevant to the issue in this case. Unlike the spouses in the above cases, Wife is not trying to shirk her duties or obligations with regard to her marriage to Husband. Rather, she is trying to collect what is presumed to be her share of the community property. *See* § 40–3–12(A). Thus, we find these cases to be inapplicable.

{20} Next, and more relevant to the present situation, Husband relies on a series of cases which hold a spouse estopped from claiming the benefits of a prior marriage on the ground that the spouse has repudiated the marital relationship by his or her conduct. Husband relies particularly on *Estate of Anderson*, 60 Cal.App.4th 436, 70 Cal. Rptr.2d 266. In that case, the husband filed a petition to determine distribution of the estate of his first wife, who had died intestate. *Id.* at 268. The husband and his first wife were married in 1955 and separated in 1958, but they had never obtained a divorce. *Id.* Shortly after the separation, the husband began a relationship with another woman. *Id.* They had five children together and eventually married in 1993. *Id.* On the application for the second marriage license, the husband stated that he had never been married before. *Id.* The first wife had entered into a subsequent marriage as well. *Id.*

{21} The court held that the husband was estopped from claiming to be the first wife's surviving spouse in order to make a claim on her estate. *Id.* at 271. The court applied what it referred to as "quasi estoppel," which it said barred a person from "act[ing] in a manner inconsistent with his former position or conduct to the injury of another." *Id.* at 269–70 (internal citations and quotation marks omitted). It decided that the husband was estopped from denying the truth of the

statement he made in the marriage license application that he had never been married before. *Id.* Particularly because the husband and his first wife had been separated for nearly 38 years, the court characterized the husband's behavior as "a complete repudiation of his marital status as [the first wife's] husband." *Id.* at 271. Finally, the court held as follows: "[U]nder the facts before us, where both parties knew the pertinent facts and over a long passage of time remarried and conducted their affairs as if their marriage was dissolved, principles of equity demand that [the husband] be estopped from asserting rights in [the first wife's] estate." *Id. See also Brown v. Brown,* 274 Cal.App.2d 178, 82 Cal.Rptr. 238, 245–46 (1969) (holding that the wife was estopped from claiming community property accumulated by the husband and his second wife where the first wife filed suit 28 years after an invalid divorce and after collecting alimony during that period, even though she filed suit soon after becoming aware of the invalidity of the divorce); *In re Estate of Butler,* 444 So.2d 477, 479 (Fla.Dist.Ct.App.1984) (holding that the wife was estopped from asserting inheritance rights in 1981 where she repudiated a 1946 first marriage by entering into a bigamous second marriage in 1947 when she thought she had been validly divorced from first husband); *Taylor v. Taylor,* 321 N.C. 244, 362 S.E.2d 542, 547 (1987) (holding that the wife was estopped from arguing the invalidity of a bigamous marriage in order to enforce an alimony provision in an earlier separation agreement).

{22} Husband argues under these cases that Wife should be estopped from claiming Husband's benefits because she repudiated her marital status with Husband when she married Orozco. Husband notes that Wife, like the husband in *Estate of Anderson,* applied for a second marriage license, affirmatively stating that she was not currently married. Husband, in accordance with *Estate of Anderson,* characterizes this action as a complete repudiation of Wife's marriage to Husband. We disagree with Husband that bigamy is a per se repudiation of a prior marriage, and we note substantial factual differences that distinguish the present case from *Estate of Anderson.*

{23} In *Estate of Anderson,* the estopped party, the husband, had been separated from his first wife for 38 years, after living with her for only three years. 70 Cal.Rptr.2d at 268. Both he and his first wife had entered into subsequent marriages, and he had lived with his second wife, having five children with her, for the period from 1958 until the first wife's death in 1996. *Id.* At least as of the commencement of the litigation, he still lived with his second wife. *Id.* Moreover, there is no indication in the *Estate of Anderson* opinion that the husband and his first wife had any contact with one another during the thirty-some years between their separation and the first wife's death. Finally, the primary assets at stake were assets that the first wife had acquired as community property with her second husband. *Id.* Under these circumstances, it is hardly a surprise that the court found the husband estopped from gaining a share of his first wife's estate by claiming to be her surviving spouse.

{24} As explained above, we must remand this case because the trial court did not make findings with regard to the parties' conduct subsequent to Wife's marriage to Orozco or Husband's knowledge of the marriage. However, it is apparent from what we do know about this case that the facts are not nearly so dramatic as those in *Estate of Anderson.* The record reveals that Wife and Orozco were married for only three years before Orozco died. While it is not clear when Wife and Husband lived together following Wife's marriage to Orozco, it appears that they may have lived together for some of that time. Evidence was adduced that they had contact with one another. There was also evidence that Husband and Wife filed a joint tax return in 2002. Finally, the assets in dispute here are assets that Wife would normally receive a share of, unlike the assets at stake in *Estate of Anderson.* Thus, even based on the scant evidence that the record contains concerning the parties' actions following Wife's marriage to Orozco, it is apparent that Wife cannot be said to have repudiated her marriage to Husband in the way that the husband repudiated his marriage to the first wife in *Estate of Anderson.*

On the record before us, we cannot say as a matter of law that Wife is estopped from claiming the benefits based on *Estate of Anderson*. We reject Husband's argument that the fact that Wife, like the husband in *Estate of Anderson*, filled out an application for a marriage license stating that she was not married changes this conclusion. We find the other cases cited by Husband to be similarly inapplicable.

{25} Finally, Husband cites cases where a spouse is barred by the doctrine of unclean hands from contesting the validity or invalidity of either a marriage or a divorce. *See Untermann v. Untermann*, 19 N.J. 507, 117 A.2d 599, 605 (1955) (holding that the wife was barred by unclean hands from contesting validity of ex parte Mexican divorce obtained by the husband where the wife had obtained a divorce from her first husband under like questionable circumstances); *McNeir v. McNeir*, 178 Va. 285, 16 S.E.2d 632, 633 (1941) (holding that the wife was prevented by estoppel, laches, and unclean hands from denying validity of divorce that she fraudulently obtained in order to re-divorce and get a more favorable settlement). We believe that this theory is closely related to the estoppel doctrine, and we find that the same factors that are relevant to the estoppel determination are relevant to an unclean hands analysis.

{26} We next address two arguments by Wife that would support our simply reversing the trial court. First, Wife argues that community property must be divided evenly and that a trial court lacks the power to make an unequal distribution of community property. We cannot completely agree with this statement. Equal distribution is certainly the general rule, but we are not prepared to establish a rule that a court can never distribute community property unequally no matter the circumstances. *See Foutz*, 110 N.M. at 644, 798 P.2d at 594 ("Proper apportionment of community property and debts depends on what is fair, considering all of the evidence with reference to the facts and circumstances of each case."); *In re Marriage of Economou*, 224 Cal.App.3d 1466, 274 Cal. Rptr. 473, 484 (1990) (noting that under California community property statutes, the court may divide property unequally when one party has deliberately misappropriated assets). *But see Beals*, 25 N.M. at 499–500, 185 P. at 793 ("[T]here is no statute in this state conferring upon the district court the power to divide the community property between the parties at its discretion. . . . [W]hile it has power to divide the property, this power does not extend further than to set apart to each of the spouses their undivided half interest in the property."). If we adopted Wife's rule, a spouse could never be precluded from receiving an equal share of community property, even under extreme circumstances like those present in *Estate of Anderson*. Thus, we decline to adopt Wife's rule.

{27} Second, Wife argues that Husband should not be permitted to pursue his estoppel argument against Wife because he knew about the bigamous marriage and yet continued to live with Wife and enjoy the benefits of the marriage. We believe this argument has merit. If a spouse is aware of the bigamous marriage and does nothing, then it would seem inequitable to allow that spouse to retain community assets to which the bigamous spouse would ordinarily be entitled.

{28} However, as we have explained, Wife's factual allegations as to the parties' conduct following the bigamous marriage were not fully explored at trial. The trial court declined to make findings regarding the date on which the parties separated and whether they cohabited at any time following the marriage to Orozco. Nor did the court make a ruling as to when Husband became aware of the marriage. Because those issues are relevant to the trial court's determination, we must remand for additional factual findings and, in the trial court's discretion, a further hearing at which the parties may develop the facts related to the estoppel argument first clearly raised on appeal. *See Martinez v. Martinez*, 1997–NMCA–125, ¶¶ 19–20, 124 N.M. 313, 950 P.2d 286 (remanding for findings and, in the discretion of the trial court, the presentation of additional evidence where trial court did not make findings that appellate court held were necessary to resolve issues in the case).

{29} Having surveyed the case law in this area and addressed the parties' arguments, we believe it prudent to provide

some guidelines on the issue of when a bigamous spouse should be deprived of his or her share of the community property. As we have detailed above, established law in New Mexico dictates that marriage establishes a contractual relationship that generally cannot be repudiated except through formal divorce or separation proceedings. Moreover, moral fault is irrelevant in divorce actions. In accordance with these principles, we hold that a spouse should only be deprived of community property due to bigamy if the circumstances of the case shock the conscience of the court. Equal division of community property should be the norm even where bigamy is involved, and the burden falls on the spouse seeking an unequal division to prove circumstances that shock the conscience.

{30} While this case does not require us to set forth exhaustive guidelines regarding hypothetical situations that might rise to the appropriate level, we do note that the trial court should consider when the non-bigamous spouse became aware of the bigamy. If the non-bigamous spouse knows or should know that the other spouse is committing bigamy, then he or she has the option of taking steps, such as getting a divorce, to protect his or her assets. If the non-bigamous spouse chooses not to take any such steps, community property should likely be divided equally. Conversely, if the non-bigamous spouse has no actual or constructive knowledge of the bigamous marriage, then perhaps he or she should not be required to divorce in order to protect his or her assets. This would be particularly true if there was evidence that the bigamous spouse took affirmative steps to hide the second marriage.

{31} Husband appears to argue that knowledge of the bigamy should be irrelevant. He argues that the type of estoppel implicated here, unlike other estoppel doctrines, does not require the party asserting estoppel to show detrimental reliance on the conduct of the other party. Husband points out several cases that specifically state that rule. *See, e.g., Taylor,* 362 S.E.2d at 546 ("Under quasi-estoppel doctrine, one is not permitted to injure another by taking a position inconsistent with prior conduct, regardless of whether the person had actually relied upon that conduct." (internal quotation marks and citations omitted)).

{32} We agree with Husband that a showing of detrimental reliance is not absolutely required. In *Estate of Anderson,* for example, it seems that the first wife did not detrimentally rely on the husband's conduct, because there was testimony that she knew and told others that she had never been divorced from the husband. 70 Cal.Rptr.2d at 268. As we have stated above, it is difficult to see how any court could have failed to find that it would be inequitable to allow the husband to claim inheritance rights as his first wife's surviving spouse. However, we have found knowledge of the bigamous marriage, with the concomitant duty to take affirmative steps such as divorce to protect one's assets, to be a crucial factor. Thus we think it would be an extraordinary case, such as *Estate of Anderson,* in which the non-bigamous spouse should succeed on an estoppel theory despite his or her knowledge of the bigamy and failure to take any action.

{33} In sum, we emphasize that the trial court should consider the overall equities of the situation, and it should only order an unequal distribution of community property in those rare cases in which it would be a violation of equity and good conscience to allow the bigamous spouse who has also demonstrated aggravated conduct to enjoy an equal share of the community.

## CONCLUSION

{34} We remand for the trial court to reconsider its decision with regard to the proper distribution of Husband's retirement benefits and to make findings regarding the factors that it finds to be controlling. In its discretion, it may take additional evidence. If the trial court does not choose to allow further evidence to be taken or if the evidence adduced does not vary materially from the evidence presented below, then the trial court should enter an order equally dividing the retirement benefits earned for the entire duration of the parties' marriage.

{35} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and MICHAEL E. VIGIL, Judges.