NOT DESIGNATED FOR PUBLICATION

No. 118,084

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
MARSHA WELLS,
*Appellee*,

and

MIKE WELLS,
*Appellant*.


MEMORANDUM OPINION


Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed July 13, 2018. Affirmed.


*Thomas A. Dower*, of Gilliland & Hayes, LLC, of Hutchinson, for appellant.


*Dan W. Forker, Jr.*, of Forker Suter LLC, of Hutchinson, for appellee.


Before ARNOLD-BURGER, C.J., POWELL and GARDNER, JJ.


PER CURIAM:  "A [divorce] decree . . . shall divide the real and personal property of the parties . . . whether owned by either spouse prior to marriage, acquired by either spouse in the spouse's own right after marriage or acquired by the spouses' joint efforts." K.S.A. 2017 Supp. 23-2802(a). Mike and Marsha Wells were married for a significant number of years. Following a divorce decree and division of property by the district court, Mike appeals the district court's division of property. He asserts that the district court erred in holding that an investment account which consisted of stock he purchased before the marriage was marital property. Mike also argues that the district court

1

incorrectly valued his pension plan and erred in not including Marsha's future interest in the pension when dividing the property. Finally, Mike generally argues that the district court abused its discretion in dividing the property. Finding that the district court's ruling was supported by substantial competent evidence and that Mike has failed to establish that no reasonable person would take the view adopted by the trial court, we affirm.

FACTUAL AND PROCEDURAL HISTORY

Marsha and Mike had been married for over 40 years when Marsha filed for divorce. This appeal concerns the division of property between Marsha and Mike.

Before the marriage Mike worked for Panhandle Eastern and purchased an unknown amount of Panhandle Eastern stock. Mike stopped buying Panhandle Eastern stock shortly after marrying Marsha. The Panhandle Eastern stock is currently known as Fidelity Investment Account ending in 382235 (Fidelity I). When Marsha filed for divorce, Fidelity I had a value of just over $46,000.

After Mike left Panhandle Eastern he worked for ONEOK. After his retirement, Mike received a pension from ONEOK. Marsha was designated as the survivor beneficiary of the pension. Marsha's designation as the surviving beneficiary is irrevocable. The parties disagreed upon the value of the pension. Marsha testified and presented tax documents showing that the pension paid $13,805.70 (approximately $1,150 a month) per year. Mike testified that the pension paid approximately $810 per month before taxes. The district court held that Marsha's interest in the pension was valuable, but that it was speculative.

While working at ONEOK, Mike injured his back and received a settlement for approximately $58,600 for future medical expenses. The district court found that the settlement was nonmarital property.

2

At the time of the trial, Mike was retired and received approximately $2,166 per month, after taxes, from Social Security. In contrast, Marsha was 63 years old and earned around $2,750 per month at her job after taxes.

The record shows the marital home had an appraised value of $95,000. During the trial, Marsha testified that the home was paid for. However, when the district court granted Marsha possession of the home, an associated home equity loan, of unknown value, was also assigned solely to her.

The record also shows that the parties had two other accounts, but the record does not readily indicate the full amount within the accounts. The district court's order does provide some information. The district court ordered that Marsha would receive $10,000 from a credit union account and $260,000 from Fidelity Investment Account ending in 028041 (Fidelity II). Mike would receive the remainder of the credit union account and Fidelity II. After Marsha filed for divorce, but before the trial, Marsha took $17,000 from a joint account. Mike took $3,000 from a joint account in the same time frame. The district court did not seem to address those sums beyond a brief mention.

Marsha and Mike also had various items of personal property. They agreed on the division of the personal property without the need for the court's intervention. The district court noted that Marsha received a "significantly higher value of household personal property."

Finally, it should be noted that Marsha and Mike care for their adult grandchildren who have special needs. Marsha was the primary caregiver throughout the marriage. Marsha and Mike both asked for possession of the house so they could continue to provide a place to live for their grandchildren. Mike testified that his granddaughter wanted to live with him. The record does not indicate who is currently acting as the primary caregiver for the grandchildren.

The district court noted that under Kansas law it was required to consider a number of factors before determining the division of property in a divorce. The district court divided the property as discussed above. Mike filed a motion to reconsider which was denied. Mike timely appeals.

Additional facts will be added below as necessary.

ANALYSIS

*Standard of Review*

A district court's division of property in a divorce action is governed by K.S.A. 2017 Supp. 23-2801 et seq. Appellate review is for abuse of discretion. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002); *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 715, 229 P.3d 1187 (2010). The burden to show abuse of discretion rests on the party alleging abuse. *In re Marriage of Larson*, 257 Kan. 456, 463-64, 894 P.2d 809 (1995).

A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

A district court's ruling on division of property should be affirmed if its findings are supported by substantial competent evidence. See *In re Marriage of Hair*, 40 Kan. App. 2d 475, 486, 193 P.3d 504 (2008). "Substantial competent evidence is evidence that possesses both relevance and substance and furnishes a substantial basis of fact from which the issues can reasonably be resolved." *Wiles*, 302 Kan. 66, Syl. ¶ 1.

*The district court did not abuse its discretion in the manner it divided Fidelity I and Mike's pension plan.*

Mike's first argument on appeal is that the district court erred with regards to two specific holdings. First, he claims that the district court erred in finding that Fidelity I was marital property. Second, he argues that as it relates to his defined benefit pension plan the district court incorrectly valued it and then erred further by not assigning a value to Marsha's interest in the plan. We will explore each in turn.

*Fidelity I*

Mike argues that the Fidelity I account should not have been considered marital property because he purchased the underlying stock before the marriage.

Under Kansas law, "[a]ll property owned by married persons . . . whether held individually or by the spouses in some form of co-ownership . . . shall become marital property at the time of commencement by one spouse against the other of an action in which a final decree is entered for divorce." K.S.A. 2017 Supp. 23-2801(a). Further "a [divorce] decree . . . shall divide the real and personal property of the parties . . . *whether owned by either spouse prior to marriage*, acquired by either spouse in the spouse's own right after marriage or acquired by the spouses' joint efforts." (Emphasis added.) K.S.A. 2017 Supp. 23-2802(a).

Mike offers no support for his argument that the district court erred in considering the Fidelity I account marital property. Although the stock contained in Fidelity I was purchased before the marriage, the parties were married approximately 45 years, resulting in growth in its value during the marriage. Mike was unable to remember how much was in the account at the time of the marriage. The language of the statutes shows that "[a]ll property owned by married persons," regardless of whether it was owned "prior to

5

marriage" becomes property that the district court can divide. See K.S.A. 2017 Supp. 23-2801(a); K.S.A. 2017 Supp. 23-2802(a). We find no abuse of discretion in the district court's decision designating the Fidelity I account as marital property given the testimony presented.

*The pension*

Mike also argues that the district court erred in (1) calculating the value of the defined benefit ONEOK pension and (2) assigning no value to Marsha's future interest in the pension.

As to the value of the pension, Mike states that it is "uncontroverted that the annual gross distribution" of the pension was $9,745.20. Mike's assertion that the amount of distribution is "uncontroverted" is not accurate. Conflicting evidence was presented at the trial about the amount the pension paid per year. Mike testified that the gross monthly distribution was approximately $810 (or approximately $9,700 per year). In contrast, Marsha testified that the pension paid $13,805.70 per year. It appears that Marsha used a tax document to arrive at that number, but the document is not in the record on appeal.

It is unclear what value the district court placed on the pension. Neither the memorandum order nor the journal entry of divorce state an amount assigned to the pension. But assuming the court valued it at approximately $13,000 per year, as the parties seem to suggest, substantial competent evidence supports that finding. Evidence presented at trial, through tax records, indicated that the pension paid a gross amount of $13,805.70 per year. Because the district court had substantial competent evidence to support its factual finding, we find no error in the court's valuation of the pension.

Mike also argues that the district court erred by finding that any value that Marsha could receive from the pension was speculative. In support, Mike points to his testimony

6

at trial that his father and maternal grandfather died in their early to mid-70s. In contrast, Marsha's mother was in or near her 90s at the time of the trial. But we note that Marsha does not currently get any money from the pension account and would not get any money from it in the future unless Mike predeceases her. It is only then that she would get a benefit through the balance of her lifetime. The district court acknowledged Mike's argument that Marsha would likely outlive him and receive payment from the pension. Although recognizing that Marsha's interest in the pension had value, the district concluded it was merely speculative.

We could not locate any Kansas appellate cases addressing this issue. Marsha relies on a Colorado case in which the Colorado Court of Appeals held that the district court did not abuse its discretion in declining to decrease an individual's portion of the property because of that person's speculative benefit in a pension. *In re Marriage of Fenimore*, 782 P.2d 872, 872-74 (Colo. App. 1989). So we will examine that case.

In *In re Marriage of Fenimore*, the husband designated his wife as the residual beneficiary of his pension. The election was nonrevocable. The district court decided not to value the survivor benefits and reduce the amount the wife received in the divorce accordingly. On appeal, the court agreed with the district court's decision. The court noted that the benefits to the wife were merely speculative because the wife could predecease the husband. Further, even if the husband predeceased the wife, there was no way to determine how long she would survive after the husband died. The court also reasoned that adjusting the payment based on the wife's speculative benefit could create a substantial injustice to one party depending on who died first. 782 P.2d at 873. Finally, the court noted that the district court was not required to divide the parties' assets equally to obtain a fair result. Considering these factors, the court affirmed the lower court's ruling. 782 P.2d at 874.

7

But another jurisdiction has held that when a pension is fully vested and matured the value of the survivor's benefit provision of a pension should be considered and apportioned appropriately. *Irwin v. Irwin*, 121 N.M. 266, 271, 910 P.2d 342 (N.M. Ct. App. 1995). Although it is not abundantly clear from the case, it seems that the husband in *Irwin* presented some evidence to show that his life expectancy, based upon statistical probabilities, was an additional 17 years while his wife's was an additional 21 years. Given that information, the New Mexico Court of Appeals held that the district court erred in not valuing and considering that value when dividing the property. 121 N.M. at 271.

We find the reasoning of the Colorado court is persuasive. Mike's argument that Marsha would outlive him was speculative at best. If the court in this case assigned a value to Marsha's future benefit in the pension it could lead to injustice to one party if the other died at an age other than what was projected. See *In re Marriage of Fenimore*, 782 P.2d at 873. Additionally, the court in this case was not required to divide Mike and Marsha's assets equally. Instead, the assets must be divided fairly and equitably. *In re Marriage of Hair*, 40 Kan. App. 2d at 481.

But even if this court were to adopt the reasoning of the New Mexico court in *Irwin*, we find that the result would be the same. Mike offered no statistical or scientific evidence backing up his claim that Marsha would outlive him. Instead, he provided anecdotal evidence that men in his family died at a younger age than the age of Marsha's still living mother. The court in *Irwin* at least had the benefit of considering the husband's and wife's future life expectancies. See 121 N.M. at 270. Without any dependable actuarial evidence to support Mike's claim, it would fail regardless of our approach to it.

In this case the district court did not err in its valuation of the pension. Substantial competent evidence supported the district court's valuation. See *Wiles*, 302 Kan. 66, Syl. ¶ 1. Additionally, the district court did not abuse its discretion by assigning no value

to Marsha's speculative future interest in the pension. See *In re Marriage of Fenimore*, 782 P.2d at 874.

*The district court did not abuse its discretion in the overall division of the marital property.*

Mike's final argument on appeal is that the district court erred in dividing the parties' property because "[i]t is clear that [the district court] was attempting to arrive at an equal division of property" and it failed to do so.

When deciding the division of property, the district court shall consider:

"(1) The age of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) their present and future earning capacities; (5) the time, source and manner of acquisition of property; (6) family ties and obligations; (7) the allowance of maintenance or lack thereof; (8) dissipation of assets; (9) the tax consequences of the property division upon the respective economic circumstances of the parties; and (10) such other factors as the court considers necessary to make a just and reasonable division of property." K.S.A. 2017 Supp. 23-2802(c).

Mike does not argue that the district court failed to consider the 10 factors. "'In the absence of an objection first made in the trial court, omissions in findings will not support reversal because the trial court is presumed to have found the facts necessary to support is judgment.'" *In re Marriage of Whipp*, 265 Kan. 500, 508-09, 962 P.2d 1058 (1998) (quoting *In re Marriage of Bradley*, 258 Kan. 39, 44, 899 P.2d 471 [1995]). On this basis alone, we could reject Mike's claim of error. But even in spite of this procedural bar, we find Mike's argument unpersuasive.

As stated above, the district court is not required to divide the property equally. Instead, the property division must be fair and equitable. *In re Marriage of Hair*, 40 Kan.

9

App. 2d at 481. The district court listed the factors it needed to consider under the statute. While the district court may not have explicitly listed its reasoning under each factor, the court was not required to do so. See *In re Marriage of Barbee*, No. 115,134, 2017 WL 1198496, at *1 (Kan. App. 2017) (unpublished opinion). The district court considered the factors and divided the property in a manner it found equitable. Based on the record on appeal, Mike has failed to show the district court abused its discretion in the division of property. See *In re Marriage of Wherrell*, 274 Kan. at 986; *In re Marriage of Larson*, 257 Kan. at 463-64.

Affirmed.