731 P.2d 959

**Jerry DORBIN, Petitioner-Appellee,**

v.

**Janette B. DORBIN, a/k/a Janet Dorbin, Respondent-Appellant.**

**No. 8438.**

Court of Appeals of New Mexico.

Nov. 12, 1986.

Saul Cohen, Sutin, Thayer & Browne, Santa Fe, for petitioner-appellee.

Randolph B. Felker, Felker & Ish, P.A., Santa Fe, for respondent-appellant.

**OPINION**

ANNE KASS, District Court Judge.

These parties were married on July 3, 1976. It was a second marriage for both.

It was a rather stormy marriage. They separated for the third and last time and filed for divorce in October 1981.

A trial setting for November 1982 was vacated at husband's request. In December 1983, a stipulated partial decree was entered in which the divorce was granted and the court retained jurisdiction to resolve money issues. The parties also then stipulated to try the case to a special master, Fletcher Catron. Trial was held on December 22, 1983. On April 4, 1984, the special master filed his report, findings of fact and conclusions of law. On December 6, 1984, the special master filed a revised report. On December 19, 1984, wife objected to the special master's report. On March 4, 1985, the Honorable Art Encinias, District Judge, filed a final decree adopting the special master's report, findings of fact and conclusions of law. Notice of appeal was timely filed by wife.

The issues wife raises are:

1. Whether it was error to allow the community to recover both principal paydown and the amount of interest paid during the marriage, which benefited the wife's sole and separate residence. It was error.

2. Whether the court abused its discretion when it denied wife alimony. It did not.

The trial court is reversed as to the first issue and affirmed as to the second issue.

**I. It was error to reimburse to the community both $3,000, being the principal paydown, and $24,148, being the amount of interest paid during the marriage which benefited the wife's sole and separate residence.**

█ The parties were married on July 3, 1976. In October 1978, wife purchased a townhouse. The purchase price was $69,000. The cash down payment of $10,000 came from wife's sole and separate money. The balance of $59,000 was financed by way of a real estate contract. Title was taken in wife's name alone, as her sole and separate property, with husband's knowledge and consent. Wife's unrebutted and unchallenged testimony was that she bought the townhouse as an investment. The plan was that when husband received his share of the house sale proceeds from his prior marital residence, wife would sell the townhouse. Wife would contribute her townhouse sale proceeds and husband would contribute his house sale proceeds, and together they would purchase their own marital residence.

Husband received his sale proceeds of $90,000 after the October 1981, separation, and wife received no benefit therefrom.

From the date of marriage until November 1978, the parties lived in a rental property. Their rent payments were $450 monthly. Apparently, in November 1978, they moved into wife's newly-acquired townhouse, where they lived together until sometime shortly before October 1981, when this divorce action was filed. Between the date of separation and the date of trial, it seems wife alone lived in the townhouse and wife alone paid the monthly payments for the townhouse for those twenty-seven months.

The record shows that during the marriage the parties had monies available from the following sources:

Husband's wages as a stockbroker of approximately $25,000 annually; husband's separate trust income of approximately $6,800 annually; wife's alimony of $400 monthly for one year; wife's child support of $350 monthly; and wife's earnings, which are impossible to determine from the record.

During the marriage, the record shows that the parties each kept his/her own bank account into which each deposited his/her own monies. Wife apparently paid for the parties' day-to-day living expenses from her account. Husband contributed monies to wife's account as follows:

| 1976 | $200/mo. | $ 600 |
| 1977 | $200/mo. | $2,400 |
| 1978 | $200/mo. | $2,400 |
| 1979 | ? | $3,950 |
| 1980 | ? | $4,440 |

| 1981 | ? | $6,433 |
| 1982 | —0— | —0— |
| 1983 | —0— | —0— |

After the townhouse was purchased, wife paid the monthly payment of $438 out of her own account. How the parties paid the $450 monthly payment for the rental property in which they lived before the townhouse was purchased is not specifically revealed in the record. However, given that both parties agreed that until 1979, husband contributed only about $200 monthly toward the community expenses paid by wife from her account, one must assume husband paid that rent, in addition to the $200 per month he paid to wife.

At the time of trial, the value of the townhouse was $100,000. The balance of the real estate contract owed thereon was about $56,000, leaving an equity (without considering costs of sale) of $44,000.

**TOWNHOUSE EQUITY**

| | | | |
|---|---|---|---|
| | | $ 10,000 | Wife's cash down payment, plus |
| Cash Equity | $ 13,000 | | |
| | | $ 3,000 | Principal paydown on R.E. contract (from purchase date to divorce date) |
| PLUS | | | |
| Appreciation Equity | $ 31,000 | | |
| EQUALS | | | |
| Total Equity | $ 44,000 | | |

---

The special master held that sixty-two months elapsed from the date the townhouse was purchased until date of divorce, thus, at $438 per month, $27,156 community dollars were spent on the townhouse during those sixty-two months. Of the $27,156, $3,000 was principal paydown and $24,156 was interest. The monthly payment did not cover taxes or insurance which were paid separately, the amounts of which are not revealed in the record.

As stated above, during the last twenty-seven months of the sixty-two months during which payments for the townhouse were being paid, the undisputed evidence is that husband contributed nothing towards those twenty-seven payments. The community existed as a matter of law until the divorce decree was entered in December 1983; however, it appears that as a matter of reality, the parties behaved as though there were no longer a marriage or a community as of the date of separation in that husband kept and spent all of his $20,500 1982 wages and all of his $21,000 1983 wages, as well as his $6,800 trust income during each of those years of separation without contributing anything toward wife's living expenses or toward the townhouse payments. Wife, too, kept all of her own 1982 and 1983 wages, the amounts of which are unknown. At the time of trial, she was earning wages of $400 per month; and she was still receiving the child support of $350 per month.

There are two concepts that should be considered here: (1) apportionment; and (2) reimbursement.

Apportionment is the principle courts apply when an asset is acquired during marriage using both separate and community monies. At divorce, the asset is apportioned between separate and community interests in a manner which achieves substantial justice.

New Mexico case law has long recognized the principle of apportionment. In *Laughlin v. Laughlin*, 49 N.M. 20, 155 P.2d 1010 (1944), the court addressed the issue of whether crops grown on farmland, which was separate property, are all separate property as well because the law says

that "rents, issue and profits" of separate property are separate. In *Laughlin,* the court concluded that the act of raising crops required the investment of time, labor, management and skills, and that the portion of the crops attributable to such time, labor, management and skills is community property. Thus, profits and increased values were to be apportioned between separate and community interests.

In *Michelson v. Michelson,* 89 N.M. 282, 551 P.2d 638 (1976), the court apportioned the equity in husband's sole and separate residence between the parties. The facts were as follows:

| | | |
|---|---|---|
| (a) | House value at time of trial | $100,000 |
| (b) | The mortgage balance at trial | 53,560 |
| (c) | Husband had purchased the land on which the house was built before marriage | 14,000 |
| | Equity | $ 32,000 |

Monies were spent to improve the property during the marriage, and both parties had spent a good deal of time and effort in decorating, designing, furnishing and landscaping the home.

The court decided that half of the $32,440 equity was attributable to natural appreciation, and the other half ($16,220) represented the community's interest. A very similar result occurred in *Hertz v. Hertz,* 99 N.M. 320, 657 P.2d 1169 (1983).

*Portillo v. Shappie,* 97 N.M. 59, 636 P.2d 878 (1981), involved a residence which was the separate property of wife. When the parties married, the structure was a four-hundred-square-foot, two-room, adobe building without electricity or running water. During the parties' twenty-six year marriage, husband used community monies and his own labor to double its size, and to add plumbing and electricity. The wife died, and the husband sought an interest in the residence. Wife's children resisted. The evidence showed that had no improvements been made, the property would have been worth $8,500 at the time the wife died. As improved, it was worth $33,400. Husband had kept few or no records or receipts as to the cost of the improvements. The trial court awarded husband a $2,800

lien on the house, being reimbursement for community monies and labor spent to improve the house. This court affirmed the trial court's decision. The New Mexico Supreme Court reversed, holding that husband was entitled to one-half of the enhanced value, being the difference between the present value of the house with the improvements, and the present value of the house without improvements. The supreme court disallowed "reimbursement" and required "apportionment."

In *Chance v. Kitchell,* 99 N.M. 443, 659 P.2d 895 (1983), the New Mexico Supreme Court reaffirmed the *Portillo v. Shappie* ruling that appreciation must be apportioned between separate and community interests. The court also stated, in *Chance,* that along with a portion of the appreciation, the community was entitled to a lien for mortgage payments made with community money, but only to the extent that the mortgage principal was reduced. That is, the portions of the mortgage payments attributable to interest, insurance or taxes would not be held to benefit the community because interest, insurance and tax payments do not increase the equity value of real estate.

In *Chance v. Kitchell, supra,* the New Mexico Supreme Court cited to *In re Marriage of Moore,* 28 Cal.3d 366, 168 Cal. Rptr. 662, 618 P.2d 208 (1980), in which the facts were startlingly similar to the facts of the case at bar. A piece of real estate was purchased using a separate cash down payment and the community made monthly mortgage payments, reducing the mortgage balance somewhat.

The California Supreme Court apportioned the appreciation equity according to the ratio that the payments on the original purchase price with community funds bear to the payments made with separate funds —i.e., the percentage shares of separate and community funds in the purchase price. It then apportioned the total equity by calculating the separate property share (down payment plus percentage of appreciation equity) and the community property share

(principal paydown plus the balance of the appreciation equity).

Applying the *Moore* formula to the case at bar results in the following apportionment:

### APPORTIONMENT OF EQUITY

**(1) Separate Property Percentage Share of Appreciation Equity ($31,000)**

|  |  |  |  |
|---|---|---|---|
|  | Separate Down Payment | $ 10,000 |  |
| PLUS | Full Amount of Loan ($59,000) MINUS community reduction of principal balance ($3,000 principal paydown) | $ 56,000 |  |
| EQUALS | Separate contribution to purchase price | $ 66,000 |  |
| DIVIDED BY | Purchase Price | $ 69,000 |  |
| EQUALS | Separate property Percentage Share of Appreciation Equity | 96% (95.65217) |  |

**(2) Community Property Percentage Share of Appreciation Equity ($31,000)**

|  |  |  |
|---|---|---|
|  | Community Reduction of Principal Balance (Principal Paydown) | $ 3,000 |
| DIVIDED BY | Purchase Price | $ 69,000 |
| EQUALS | Community Property Percentage Share of Appreciation Equity | 4% (4.34782) |

**(3) Separate Property Share of Total Equity ($44,000)**

|  |  |  |
|---|---|---|
|  | Separate Property Percentage Share of Appreciation Equity | 96% |
| MULTIPLIED BY | Appreciation Equity | $ 31,000 |
| EQUALS |  | $ 29,760 |
| PLUS | Separate Down Payment | $ 10,000 |
| EQUALS | Separate Property Dollar Share of Total Equity | $ 39,760 |

**(4) Separate Property Share of Total Equity ($44,000)**

|  |  |  |
|---|---|---|
|  | Community Property Percentage Share of Appreciation Equity | 4% |
| MULTIPLIED BY | Appreciation Equity | $ 31,000 |
| EQUALS |  | $ 1,240 |
| PLUS | Principal Paydown | $ 3,000 |
| EQUALS | Community Property Dollar Share of Total Equity | $ 4,240 |

While the *Moore* formula has never been specifically applied in New Mexico, it is an equitable formula. The New Mexico Supreme Court has repeatedly held that there is no one method of apportionment to the exclusion of others. The standard is substantial justice. *See Portillo v. Shappie.* The *Moore* formula is still applied in California. *See In re Marriage of Marsden,* 130 Cal.App.3d 426, 181 Cal.Rptr. 910 (1982); *In re Marriage of Gowdy,* 178 Cal. App.3d 1228, 224 Cal.Rptr. 400 (1986).

The special master erred in awarding the community $27,156, comprised of $3,000 of principal paydown and $24,156 in interest.

Applying the *Moore* formula, the award to wife as her separate property is $39,760 (comprised of her $10,000 down payment and $29,760, the separate property share of appreciation equity) and the award to the community is $4,240 (comprised of the $3,000 principal paydown and $1,240, the community property share of appreciation equity).

The matter should be remanded to determine what the principal paydown was in October 1981 when the parties separated and apply the *Moore* formula using that figure. On December 22, 1983, the error made by the special master was that he

applied the concept of reimbursement rather than that of apportionment.

As stated above, apportionment is a legal concept that is properly applied to an asset acquired by married people "with mixed monies"—that is, partly with community and partly with separate funds.

When community money is spent to the benefit of separate property, without the *acquisition* of an asset, for example, when money is paid for interest, taxes and insurance, neither New Mexico statute nor case law authorizes reimbursement. Similarly, when separate money is spent for the benefit of the community, but no asset is acquired, for example, if separate money is spent for food, clothing, travel, etc., reimbursement is not authorized. It is notable that husband cites no authority, from New Mexico or elsewhere, to support the trial court's reimbursement award. Specific authority to the contrary is found at *Mitchell v. Mitchell,* 104 N.M. 205, 719 P.2d 432 (Ct.App.1986), in which this court affirmed a trial court's refusal to allow reimbursement for husband's separate monies spent to benefit the community because in *Mitchell,* husband could not trace the monies to any particular, existing asset. Specific authority denying reimbursement for separate funds spent to meet community living expenses is found at *See v. See,* 64 Cal.2d 778, 51 Cal.Rptr. 888, 415 P.2d 776 (1966). In *See,* Justice Traynor noted that husbands and wives have a mutual duty to support one another, including the use of separate funds where necessary or appropriate. It is sound policy to allow apportionment of an existing asset acquired with mixed monies (community and separate monies) and to deny reimbursement of monies spent, but not to acquire an asset. To do otherwise would be to invite litigation for accountings between spouses to determine who paid for the least significant thing.

Husband cites to *Hughes v. Hughes,* 101 N.M. 74, 678 P.2d 702 (1984), as support for the trial court's reimbursement of interest. In *Hughes,* the New Mexico Supreme Court approved the trial court's award to wife of half the community funds spent, (1) to make mortgage payments, and (2) to improve husband's separate residence, plus interest on those community monies.

The "interest" which the court awarded was not the interest portion of the mortgage payments. Rather, the court was applying yet another method of apportionment, which method is a four-step formula:

1) The value of the separate asset or the separate portion of an asset at the date of marriage is determined.

2) That pre-marriage value is treated as though it had been a well-secured, long-term investment and such interest as a well-secured, long-term investment would have earned is added to the separate pre-marriage value. The total is the separate property interest.

3) The fair market value of the asset is determined as of the date of divorce.

4) The fair market value of the asset as of the date of divorce is apportioned with the separate property owner taking an interest equal to the value found at step 2 while the community receives the balance of the fair market value.

This method of apportionment was applied by the New Mexico Supreme Court in *Laughlin v. Laughlin,* and in *Katson v. Katson,* 43 N.M. 214, 89 P.2d 524 (1939). The California Supreme Court applied this apportionment method in *Periera v. Periera,* 156 Cal. 1, 103 P. 488 (1909). Simply put, this method of apportionment gives the separate property owner "a fair return on his investment." The method, of course, requires (a) evidence of the asset's value, both at date of marriage and at date of divorce; and (b) evidence of what constitutes a "fair return," or what interest on a long-term, well-secured investment would have been. Since no such evidence was presented in the case at bar, the method could not be considered herein.

## II. The trial court did not abuse its discretion in denying wife alimony.

Wife was forty-four years of age at the date of trial. The parties had been married seven years (five years to date of separation). Wife had a GED. During her first marriage, she had not worked out of the home. She was the mother of four. After her first divorce, and during this marriage, she worked as a receptionist, a sales clerk and a real estate salesperson. She does not seem to have been particularly successful at any of these occupations. She suffers from an inner ear disease which results in vertigo and causes nausea. The assets awarded her are meager enough. Clearly, had the trial judge awarded alimony, the award would not have been an abuse of discretion. The standard to determine whether an award or denial of alimony is abuse of discretion is whether the award/denial was beyond all reason, *see Hurley v. Hurley,* 94 N.M. 641, 615 P.2d 256 (1980) and *Michelson v. Michelson,* 86 N.M. 107, 520 P.2d 263 (1974). The trial court's denial of alimony in this case cannot be said to have been an abuse of discretion.

The matter is remanded to the trial court to apply the *Moore* formula, using the October 1981 principal paydown figure. Wife is awarded $2,000 toward her attorney fees on appeal. This award is based largely on the fact that husband urged, both at trial and on appeal, a ruling that is contrary to existing New Mexico case law. *See Chance v. Kitchell.* Husband so urged without citing persuasive authority and without providing a policy argument as to why the *Chance* holding should not control. Counsel should be aware of their responsibilities as officers of the court to advise the court of the existence of case law which is on point, be it supportive or contrary to their client's position. This is not to suggest that counsel ought not challenge existing case law, but in doing so, counsel should alert the court that such a challenge is being presented and why.

IT IS SO ORDERED.

ALARID and FRUMAN, JJ., concur.