This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37682

**LANA S. POZEN,**

Petitioner-Appellant,

v.

**RAYMOND MARK FICKLER,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Gerard J. Lavelle, District Judge**

Lana S. Pozen
Albuquerque, NM

Pro Se Appellant

Raymond Mark Fickler
Albuquerque, NM

Pro Se Appellee

### MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Lana Pozen (Wife) petitioned for the dissolution of her marriage to Mark Fickler (Husband) and for a division of their property, including one real property in Sedona, Arizona, and another in Albuquerque, New Mexico. The district court determined that both properties were 100% community property and awarded Wife and Husband a one-half interest in each. Wife appeals. We reverse and remand.

### BACKGROUND

**{2}** Wife and Husband were married on October 24, 1993. It is undisputed that Wife had purchased three properties in the state of Washington prior to their marriage, two of which are at issue in this appeal.[1] She bought the first property, known as "Lake Hills," in 1989, and the second property, known as "Clyde Hill," in 1991. Although Wife and Husband lived in the Clyde Hill property briefly after their marriage, both Lake Hills and Clyde Hill were primarily rental properties. The parties refinanced the debt on both properties in 1998 and Husband's name was added to the deeds; in addition, all mortgage payments were made from a joint account and the rental proceeds were comingled in the parties' joint bank account. Husband also contends that marital funds were used to subsidize and maintain Clyde Hill.

**{3}** In 2000, the parties sold the Lake Hills property and applied $80,033.43 from the proceeds of the sale to purchase a property in Sedona, Arizona (Sedona), titled in joint tenancy with rights of survivorship. In 2005, the parties sold the Clyde Hill property and applied $193,657.10 from the proceeds of the sale to purchase a property on Oakland Avenue in Albuquerque, New Mexico (Oakland Avenue), also titled in joint tenancy with rights of survivorship.[2] While both Sedona and Oakland Avenue were originally purchased as rental properties, the parties were living in the Oakland Avenue property at the time Wife filed a petition for divorce on February 8, 2017.

**{4}** During the divorce proceedings, the parties resolved the majority of their disputes before trial, but were unable to agree on ownership of Sedona and Oakland Avenue. Wife claimed that both properties were her separate property because they could be traced and identified to her separate property acquired before marriage, whereas Husband claimed that Sedona and Oakland Avenue were 100% community property, arguing that Wife's separate interest had been transmuted over the years. A domestic relations hearing officer conducted a two-day hearing on the merits in June 2018 to determine the parties' separate and community interests in the real properties, after which she submitted a report to the district court with her findings and recommendations. Although the hearing officer found it was undisputed that Wife purchased Lake Hills and Clyde Hill before marriage and that those properties "began as Wife's sole and separate property," the hearing officer nevertheless found that the two replacement properties, Sedona and Oakland Avenue, were 100% community property and proposed to divide the equity equally between the spouses.

**{5}** The hearing officer noted the presumption that all property acquired during marriage is community property and found that Wife had not met her burden to overcome that presumption because she had not proven her separate property interest by a preponderance of the evidence. In particular, the hearing officer stated that "Wife was unable to demonstrate a tracing of her separate interest in any of the original . . . properties, in that there is no record of initial purchase price, down payment and equity

---

[1]The State of Washington, like New Mexico, is a community property state. *See, e.g., Seizer v. Sessions*, 940 P.2d 261, 266 (Wash. 1997) (en banc).

[2]Both Lake Hills and Clyde Hill were sold and exchanged for Sedona and Oakland Avenue, respectively, via the IRS 1031 exchange process, which is a tax shelter tool that allows a person to exchange real property held as an investment solely for other investment property that is the same type or "like-kind."

at time of purchase. There is no evidence of how funds were or were not spent during the marriage, and no evidence of the management of the properties through the year 2000." Consequently, the hearing officer concluded that the "burden shifting to Husband to prove transmutation need not be addressed, as Wife has not proven her first step of tracing and identifying her separate interest." Over Wife's objections, the district court adopted the hearing officer's report as its final order without a further hearing. Wife appeals.

## DISCUSSION

**{6}** On appeal, Wife argues that the district court erred in characterizing the Sedona and Oakland Avenue properties as 100% community property because they were purchased as a direct exchange for the sale of her separate properties. We review Wife's challenges to the district court's findings of fact regarding the subject properties for substantial evidence, viewing the evidence "in the light most favorable to support the district court's findings, resolving all conflicts and indulging all permissible inferences in favor of the decision below." *Gabriele v. Gabriele*, 2018-NMCA-042, ¶ 18, 421 P.3d 828 (alteration, internal quotation marks, and citation omitted), *cert. denied*, 2018-NMCERT___ (No. S-1-SC-36945, May 4, 2018). But we review de novo the district court's conclusions of law respecting the Sedona and Oakland Avenue properties, "including threshold determinations regarding whether property is separate or community or whether the community has acquired an interest in separate property." *Id.*

**{7}** Wife presented evidence showing that Lake Hills and Clyde Hill were "exchanged" for Sedona and Oakland Avenue, respectively, as well as the specific amounts applied from the sale of Lake Hills and Clyde Hill to purchase the current properties. The hearing officer's report, adopted by the district court, incorporated and relied on that evidence, noting that "part of the purchase price of what is now the Sedona rental . . . included $80,033.43 in funds received" from the sale of the Lake Hills property, and $193,657.10 from the sale of the Clyde Hill property transferred "directly to the purchase [of] the Oakland Avenue property." Notwithstanding this, the hearing officer and the district court concluded that Wife had failed to adequately trace her separate property interest, stating that "[m]ultiple transfers from sole ownership to joint tenancy, with all maintenance costs and proceeds going in and out of joint accounts, combined with an absence of documentation showing or tracing the initial separate funds—ultimately results in the total failure and inability to trace the separate interest."

**{8}** In New Mexico, property is designated as separate or community at the time it is acquired "and is fixed by the manner of its acquisition." *Nichols v. Nichols*, 1982-NMSC-071, ¶ 22, 98 N.M. 322, 648 P.2d 780 (internal quotation marks and citation omitted). Property acquired during marriage by either or both spouses is presumed to be community property. *Id.*; *see* NMSA 1978, § 40-3-8(B) (1990) (defining community property as "property acquired by either or both spouses during marriage which is not separate property"). "A party asserting that such property is separate has the burden of presenting evidence that would rebut the presumption by a preponderance of the evidence." *Nichols*, 1982-NMSC-071, ¶ 22.

**{9}** In this case, it is undisputed that Wife bought the Lake Hills and Clyde Hill properties before the marriage and that both properties were her separate property. *See* § 40-3-8(A)(1) (defining separate property as "property acquired by either spouse before marriage"); *Bayer v. Bayer*, 1990-NMCA-106, ¶ 12, 110 N.M. 782, 800 P.2d 216 ("Property acquired in community property states takes its status as community or separate at the time it is acquired, and by manner of acquisition."). When tracing Wife's separate interest in those properties throughout the duration of the marriage, we note that "[o]nce the property's separate character has been established, it maintains that character until it is shown to be community property by direct and positive evidence." *Zemke v. Zemke*, 1993-NMCA-067, ¶ 18, 116 N.M. 114, 860 P.2d 756; *see Campbell v. Campbell*, 1957-NMSC-001, ¶ 80, 62 N.M. 330, 310 P.2d 266 ("[I]f acquired as separate property, it retains such character even though community funds may later be employed in making improvements or discharging an indebtedness thereon."). As well, "the income, fruits, and natural increase in the value of separate property remain separate property." *Bayer*, 1990-NMCA-106, ¶ 13; *see Gabriele*, 2018-NMCA-042, ¶¶ 24-26 (stating that the separate property interest "may include the increased equity in one spouse's separate real property" and that "[a]ny increase in the value of separate property is presumed to be separate [property]"). And finally, "the proceeds of the sale of separate property and property acquired therewith or that which is purchased with money which was separate property or taken in exchange for separate property ordinarily continue to be separate property." *Burlingham v. Burlingham*, 1963-NMSC-068, ¶ 20, 72 N.M. 433, 384 P.2d 699 (internal quotation marks and citation omitted). Applying these principles here, we conclude that Wife established an initial separate property origin in the amounts of $80,033.43 and $193,657.10—the proceeds from the sale of her Lake Hills and Clyde Hill properties, respectively, used to purchase the Sedona and Oakland Avenue properties. *See Bayer*, 1990-NMCA-106, ¶¶ 12-13 (discussing how the husband traced proceeds to the sale of his separate property).

**{10}** Based on the separate property origin of the Washington properties, all of the equity from those properties would be classified as Wife's separate property *unless* the community acquired a community lien or the parties changed the character of the properties from separate to community through transmutation—at any time during the marriage, including after purchase of the Sedona and Oakland Avenue properties. *Gabriele*, 2018-NMCA-042, ¶ 25 (stating that "the separate interest is entitled to the full value of the property" unless the community has acquired an interest in the separate property); *Zemke*, 1993-NMCA-067, ¶ 18 ("Any increase in the value of separate property is presumed to be also separate unless rebutted by direct and positive evidence that the increase was due to community funds or labor."); *see Nichols*, 1982-NMSC-071, ¶ 22 ("The determination of its legal status as separate or community property is merely the initial inquiry, however, because the spouses are permitted to change the property's status."). Although the district court ultimately concluded that Wife had failed to establish that her separate assets were used to acquire the Sedona and Oakland Avenue properties—and thus, that Wife was not entitled to the equity from the Lake Hills and Clyde Hill properties as her separate property—the court specifically declined to engage in an analysis of whether transmutation had occurred, stating, "Although there is also evidence of transmutation and that the parties intended to run all

of the properties as a joint family enterprise, the second step, [the] burden shifting to Husband to prove transmutation need not be addressed, as Wife has not proven her first step of tracing and identifying her separate interest." Because the district court could not have concluded that Wife had failed to identify and trace her separate property without also concluding that the Washington properties had been transmuted or that the community had acquired a lien in their equity, its order is contradictory as a matter of law.

**{11}**   Having concluded that Wife met her legal burden of establishing an initial separate property origin in the amounts of $80,033.43 and $193,657.10 as applied, respectively, to the Sedona and Oakland Avenue properties, we reverse the district court's contrary ruling. On remand, the district court must determine whether the Washington properties, or their equity, were transmuted or whether the community acquired an equitable lien in them. *See Allen v. Allen*, 1982-NMSC-118, ¶ 13, 98 N.M. 652, 651 P.2d 1296 ("Transmutation is a general term used to describe arrangements between spouses to convert property from separate property to community property and vice versa."); *see also Nichols*, 1982-NMSC-071, ¶¶ 23-30 (providing a detailed analysis of transmutation by commingling and transmutation by gift); *Bayer*, 1990-NMCA-106, ¶ 20 (discussing community liens and stating that "[w]hen community efforts, labor, industry, or funds enhance the value of separate property, such enhancement is community property for which the community is entitled to reimbursement" (internal quotation marks and citation omitted)). It was Husband's burden to establish the community interest. *See Allen,* 1982-NMSC-118, ¶ 3 ("[T]he party alleging the transmutation must establish the transmutation of property to community property by clear, strong and convincing proof."); *Gabriele*, 2018-NMCA-042, ¶ 26 ("The party claiming the existence of a community lien on separate property bears the burden of proving that the property's appreciation is attributable to the expenditure of community, rather than separate, funds."). Although the hearing officer's findings demonstrate that Husband presented evidence relevant to his claims,[3] we cannot be certain that the district court found that transmutation had occurred by clear and convincing evidence, or that the community acquired a lien and its amount, nor can we weigh the evidence on appeal. *Duke City Lumber Co. v. Terrel*, 1975-NMSC-041, ¶ 5, 88 N.M. 299, 540 P.2d 229 ("New Mexico decisions involving the burden of proof by clear and convincing

---

[3]For example, the hearing officer found that the original properties were refinanced after marriage and titled into both Husband and Wife's names, and then sold by Husband and Wife. As well, the rental income was deposited into a joint bank account where it was commingled, all mortgage payments were made from a joint account, and the evidence presented at the hearing included a document stating that the transfer of the properties into joint tenancy status was "to establish community property." *Compare Blake v. Blake*, 1985-NMCA-009, ¶ 74, 102 N.M. 354, 695 P.2d 838 (stating that "the fact of the deed in the name of the parties as grantees does not alone establish transmutation, nor does the passing of funds through a joint account"), *with Nichols*, 1982-NMSC-071, ¶¶ 21-22 (finding transmutation by gift when husband sold a separate property home, deposited funds into the parties' joint bank account, and purchased a new home on a real estate contract in both parties' names, reasoning that while the contract is not conclusive, it constitutes some evidence of intent to transmute, coupled with the husband's testimony that inferred he intended for the wife to have a legal interest in the house and the commingling of the separate funds with community funds).

evidence have expressly stated or clearly implied that it is for the finder of the facts, and not the appellate courts, to weigh conflicting evidence and decide where the truth lies.").

{12}     The district court's findings and conclusions with respect to these matters will determine whether any of the equity from Lake Hills and Clyde Hill that was applied toward the purchase of the Sedona and Oakland Avenue properties remained Wife's separate property. If so, the district court must determine the extent of the respective community and separate interests in Sedona and Oakland Avenue, and then proceed to apportion the equity in those properties between Wife's separate interest and the community's interest in accordance with New Mexico case law. *See Gabriele*, 2018-NMCA-042, ¶ 27. Finally, because the issue may arise on remand, we note that even if Wife contributed separate property toward the purchase of Sedona and Oakland Avenue, the district court did not necessarily err in classifying those properties as community assets. *Compare Dorbin v. Dorbin*, 1986-NMCA-114, ¶¶ 31-33, 105 N.M. 263, 731 P.2d 959 (stating that a spouse may be entitled to reimbursement or apportionment for the value of the separate property contribution toward an asset purchased with mixed-monies), *with Allen*, 1982-NMSC-118, ¶ 11 (holding that a property purchased after the parties' remarriage was "clearly identifiable as [the wife's] separate property because it was uncontested that it was purchased by [the wife] with funds from her separate bank account in which [the husband] admits he had absolutely no interest").

**CONCLUSION**

{13}     For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

{14}     **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**ZACHARY A. IVES, Judge**