This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38862

**EILEEN N. BURKE,**

Petitioner-Appellee,

v.

**THOMAS J. BURKE,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**Cheryl H. Johnston, District Judge**

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Charles K. "Kip" Purcell
Albuquerque, NM

for Appellee

Roybal-Mack Law, P.C.
Dynette C. Palomares
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**BACA, Judge.**

**{1}** Thomas J. Burke (Husband) appeals the district court's final orders associated with divorce proceedings between Husband and Eileen N. Burke (Wife). Husband argues the district court erred (1) in its finding of duress concerning an agreement between the parties, (2) when it awarded Wife spousal support, (3) when it denied Husband's request for subsequent attorney fees, and (4) in its division and allocation of community property and debts. For the reasons below, we affirm the district court as to all issues except for the district court's failure to allocate Wife's Bank of America IRA to

one or both parties and the district court's omission of this IRA from the equalization chart. As to that issue, we remand with directions to resolve this issue.

**BACKGROUND**

**{2}** Husband and Wife were married on June 15, 1991. On May 13, 2010, to induce Wife to sign a College Fund Agreement (the Agreement) to use the equity in several of the homes the parties owned to help pay for their children's college, Husband petitioned for dissolution of marriage. On July 26, 2010, after Wife signed the Agreement, Husband filed an order dismissing the divorce petition.

**{3}** Years later, on February 4, 2016, Wife petitioned for dissolution of marriage. A merits hearing was held on the petition on July 2, 2019. On September 26, 2019, the district court filed its order from the July 2, 2019 merits hearing (the Order). In the Order, the district court found that Wife signed the Agreement regarding funding their children's college expenses under duress and concluded that the Agreement was void. As well, the Order divided and allocated several community and separate assets and debts, awarded Husband attorney fees of $2,648, and awarded monthly spousal support to Wife. Husband appeals these rulings. We discuss each in turn.

**DISCUSSION**

**I.      College Fund Agreement**

**{4}** The Agreement presented by Husband to Wife required Wife to withdraw $22,000 from her separate premarital retirement account and provided for the sale of three properties over time. Although ultimately Wife sold none of the properties under the Agreement, the district court found that Wife signed the Agreement under duress, making the Agreement void. On appeal, Husband argues the district court erred in its finding of duress and unfair dealings against him.

**{5}** We review the issue of duress for substantial evidence. *See Garcia v. Marquez*, 1984-NMSC-074, ¶ 4, 101 N.M. 427, 684 P.2d 513. Questions of substantial evidence are viewed "in a light most favorable to the findings and conclusions of the trial court and [the appellate c]ourt will not reverse unless convinced that the judgment and the findings and conclusions upon which it is based cannot be sustained either by the evidence or by permissible inferences therefrom." *Id.* ¶ 6. "Duress, as a principle of contract law, applies defensively against a party attempting to enforce contractual rights. More specifically, it renders contracts voidable which have been tainted by coercive influence in their formation." *Scheidel v. Scheidel*, 2000-NMCA-059, ¶ 20, 129 N.M. 223, 4 P.3d 670. Viewing the following evidence in the light most favorable to the decision rendered by the district court, *see Garcia*, 1984-NMSC-074, ¶ 6, we hold that substantial evidence supports the district court's finding that Wife signed the Agreement under duress. We explain.

**{6}**     First, the district court found that Husband prepared the Agreement and presented it to Wife. To induce Wife to sign the Agreement, Husband petitioned for dissolution of marriage and told Wife that he would dismiss the petition if she signed the Agreement. After Wife signed the Agreement, Husband dismissed the petition.

**{7}**     Second, the district court considered that Husband was in a stronger economic position than Wife. The record reveals that Husband was the primary income producer for the family through his work as a real estate broker while Wife worked as a paralegal only for the first few years of the marriage, then stayed home to raise and care for the parties' minor children for the rest of the marriage. Husband was sophisticated in real estate investments, and Wife trusted him to deal with her property fairly.

**{8}**     Third, the district court found that Husband had exploited Wife for his own benefit. The district court, in making this finding, recounted an instance where Husband persuaded Wife to sign a mortgage and other documents related to Husband's separate property home in Anaheim, California (Anaheim Property), which resulted in the use of community funds to benefit the property, and Wife later signed a deed that declared the Anaheim Property Husband's sole and separate property. As a result, the district court found that it was "unclear whether Wife understood the consequences of signing [a deed for Husband's Anaheim Property]" he obtained prior to the marriage. As to the circumstances of Wife's signature on the deed for the Anaheim Property, the district court was "suspicious of the circumstances under which Husband obtained the signature," and found that "Husband's testimony regarding the circumstances [was] not credible." Considering this evidence, the district court found credible Wife's testimony that she signed the Agreement under duress to stop the divorce, protect her children, and keep her family together while the children were minors.

**{9}**     Drawing reasonable inferences from this evidence, we hold that substantial evidence supports the district court's conclusion that Wife signed the Agreement under duress. *See Las Cruces Pro. Fire Fighters & Int'l Ass'n of Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177 (stating that "we will not reweigh the evidence nor substitute our judgment for that of the fact[-]finder").

**{10}**     Husband does not dispute the district court's finding that he induced Wife to sign the Agreement by filing a divorce petition. Instead, Husband argues that because he had a legal right to pursue or dismiss his divorce petition, the district court's finding of duress was error. For support of this argument, Husband relies on *Lebeck v. Lebeck*, 1994-NMCA-103, ¶ 22, 118 N.M. 367, 881 P.2d 727, for the proposition that "[a] lawful demand or a threat to do that which the demanding party has a right to demand is not sufficient to support a claim of duress." In other words, Husband claims that because he had a right to petition for divorce and dismiss the action, the district court's finding of duress here was error. Husband's reliance on *Lebeck* is misplaced.

**{11}**     Husband's argument is similar to the argument the appellee made in *Richards v. Allianz Life Insurance Co. of North America*, 2003-NMCA-001, ¶ 23, 133 N.M. 229, 62 P.3d 320. In *Richards*, the defendant relied on *Lebeck* to rebut a duress defense,

arguing that its termination and substitution of previous contracts "was doing nothing more than what it was allowed to do." *Richards*, 2003-NMCA-001, ¶ 22. This Court rejected the defendant's reliance on *Lebeck* and explained how our doctrine of duress has evolved since *Lebeck*. *Richards*, 2003-NMCA-001, ¶ 23 ("As we shall explain, [the defendant]'s position significantly overstates the force of *Lebeck*.").

**{12}** *Richards* discussed how duress has evolved from "actual or threatened violence" to now focusing on the "wrongful act of another." *Id.* ¶¶ 28-30 (internal quotation marks and citations omitted). Under modern New Mexico case law, *Richards* explained, the inquiry to determine whether a contract has been obtained by duress is to ask, "whether a person has been coerced into the transaction by the wrongful act of another." *Id.* ¶ 30 (alteration, internal quotation marks, and citation omitted). The policy aim of the rule "is to discourage or prevent an individual in a stronger position, usually economic, from abusing that power in a bargain situation." *Id.* (omission, internal quotation marks, and citation omitted). "Thus, the fundamental issue in duress cases is whether the statement which induced the agreement is the type of offer to deal that the law should discourage as oppressive and thus improper." *Id.* Consequently, Husband's reliance on *Lebeck* is unavailing.[1]

**{13}** Husband next argues, under *Scheidel*, 2000-NMCA-059, ¶ 20, that Wife's rationale for signing the Agreement based on her concern for her children and her desire to preserve the marriage were external factors not caused by Husband and thus cannot be the basis for duress. *Scheidel* is inapplicable.

**{14}** Under a valid marital settlement agreement, the husband in *Scheidel* was prohibited from taking any *voluntary action* to reduce the wife's retirement benefit payments; otherwise, he would have to indemnify the wife. *Id.* ¶ 17. Some years later, the husband applied for increased disability benefits due to his deteriorating health, which reduced the wife's retirement benefits contrary to their marital settlement agreement. *Id.* ¶¶ 17, 20. On appeal, husband argued that "his medical needs were of such exigency that his conduct should be regarded as the product of coercion or duress." *Id.* ¶ 20. This Court rejected the husband's duress claim and held that the doctrine of duress "*fulfills the purpose of policing contract formation* [but] it does not allow a party to avoid his contractual obligations where external forces have induced him to breach a contract validly formed." *Id.* ¶ 20 (emphasis added). Here, unlike *Scheidel*, Wife was under the coercive influence of Husband at the time she signed the Agreement. The coercion or duress suffered by Wife stemmed from Husband filing a divorce petition, which was withdrawn after the Agreement was signed, that Husband intentionally filed, to induce Wife to sign the Agreement. Consequently, *Scheidel* is inapplicable to these circumstances.

---

[1] Additionally, Husband argues that Wife presented no evidence that he threatened Wife with harm or any level of force to induce her to sign the agreement. Husband, however, does not cite any authority in support of this contention. Consequently, we will not further consider this argument. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

**{15}** Finally, Husband argues that Wife only introduced "self-serving testimony" for her claim of duress and did not present third-party witnesses to support her claims. Husband made this identical argument below. The district court, however, considered Wife's testimony credible and found that Husband did not introduce substantial evidence to rebut any of Wife's allegations of unfair dealings. Because Husband does not dispute this on appeal, we defer to the district court's determination of the credibility of Wife's testimony. *See, e.g.*, *Skeen v. Boyles*, 2009-NMCA-080, ¶ 37, 146 N.M. 627, 213 P.3d 531 (stating that when the district court hears conflicting evidence, "we defer to its determinations of ultimate fact, given that we lack opportunity to observe demeanor, and we cannot weigh the credibility of live witnesses"); *see also Autrey v. Autrey*, 2022-NMCA-042, ¶ 9, 516 P.3d 207 ("The testimony of a single witness, if found credible by the district court, is sufficient to constitute substantial evidence supporting a finding."), *cert. granted* (S-1-SC-39371, Aug. 10, 2022). Unpersuaded by Husband's arguments, we affirm the district court's finding of duress.

## II.    Attorney Fees

**{16}** While Husband acknowledges that the district court awarded him attorney fees of $2,648, he argues that the district court did not rule on a subsequent award of attorney fees in the district court's final decree. Husband, however, does not sufficiently develop his argument about the amount sought by him. That is, Husband does not establish either on the record in the district court or in the briefing the amount he is seeking. As a result, we only address Husband's argument about whether the district court erred by not including the subsequent attorney fee award in its final order. For the reasons set forth below, we find no error.

**{17}** Appellate courts review an award of attorney fees for abuse of discretion. *Lebeck*, 1994-NMCA-103, ¶ 27. A district court abuses its discretion when "a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153. "The decision whether to grant or deny a request for attorney fees rests within the sound discretion of the district court." *Garcia v. Jeantette*, 2004-NMCA-004, ¶ 15, 134 N.M. 776, 82 P.3d 947. In making its determination, "the district court is to consider a number of factors including disparity of the parties' resources, prior settlement offers, the total amount of fees and costs expended by each party, and the success on the merits." *Weddington v. Weddington*, 2004-NMCA-034, ¶ 27, 135 N.M. 198, 86 P.3d 623. No single factor is dispositive. *See id.* ¶ 28.

**{18}** The "central purpose" of an award of attorney's fees under NMSA 1978, Section 40-4-7(A) (1997) "is to remedy any financial disparity between the divorcing parties so that each may make an efficient and effective presentation of his or her claims." *Garcia*, 2004-NMCA-004, ¶ 19. Further, the "primary test" to determine whether such an award is warranted is "a showing of economic disparity, the need of one party, and the ability of the other to pay." *Quintana v. Eddins*, 2002-NMCA-008, ¶ 33, 131 N.M. 435, 38 P.3d 203 (internal quotation marks and citation omitted).

**{19}**   Here, the district court at first awarded Husband attorney fees of $2,648. This award originates from a domestic relations hearing officer report, filed on April 5, 2018, that found Wife's motions to compel were meritless and made in bad faith. The report and recommendation of an award of attorney fees against Wife was adopted as an order of the district court in an order filed on September 25, 2018. On June 25, 2019, the district court entered an order (June 25 Order) in which it granted Husband's later requests for attorney fees based on Wife's many discovery requests served on Husband after court-imposed deadlines. In the June 25 Order, the district court did not specify the amount of fees awarded. Instead, it ordered Husband to "submit an [a]ffidavit of [a]ttorney[] [f]ees to the [c]ourt for determination of the fee to be paid." In response, Husband's attorney submitted an affidavit of *his entire bill to date* in the amount of $20,630.23. The June 25 Order did not state that Wife was to pay Husband's entire legal bill. Rather, the district court left open for later determination following submission of Husband's affidavit, the amount of subsequent fees to be awarded to Husband. Our review of the record reveals that, between the June 25 Order and the merits hearing held on July 2, 2019, the district court did not issue an order, oral or written, resolving this issue. Consequently, the issue of the amount of subsequent attorney fees to be awarded Husband because of Wife's violation of the Court's discovery deadlines was left undecided until after the merits hearing held on July 2, 2019.

**{20}**   Following the merits hearing of July 2, 2019, the district court awarded Husband attorney fees of only $2,648, the amount it previously awarded Husband. The district court awarded Husband only this sum of attorney fees after it considered the testimony and evidence presented at the merits hearing. In support of its decision, the district court found that "[b]oth parties took actions during the pendency of the case to lengthen litigation. No party should receive an award of attorney[] fees beyond those previously awarded." The district court's determination of the amount of attorney fees to be awarded Husband was consistent with the June 25 order, in which it deferred resolution of the amount of attorney fees to be awarded to Husband until after submission of his affidavit of attorney fees. *See Sims*, 1996-NMSC-078, ¶ 59 (stating that the court may revise decisions at any time before final judgment). Because the district court's award of attorney fees was consistent with the June 25 Order and was modifiable as an interlocutory order at any point until it issued its final order in this divorce, we conclude that the district court did not abuse its discretion in its final determination of the amount of attorney fees it awarded Husband.

### III.   Spousal Support

**{21}**   Husband argues there was insufficient evidence to support the district court's award of spousal support to Wife. Husband contends that Wife did not establish a need for spousal support, did not present evidence that she lacked the ability to support herself, nor prove any reasonable effort to become self-supporting. Husband also contends that the district court erred in awarding spousal support because he offered unrebutted testimony of the financial hardship this would cause him.

**{22}** We review a district court's award of spousal support for an abuse of discretion. *Clark v. Clark*, 2014-NMCA-030, ¶ 8, 320 P.3d 991. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Hough v. Brooks*, 2017-NMCA-050, ¶ 18, 399 P.3d 387 (internal quotation marks and citation omitted). Under such a review, "we will uphold the district court's findings if they are supported by substantial evidence." *Id.* "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

**{23}** "In determining whether to order spousal support, the district court is to consider: (1) the needs of the proposed recipient[;] (2) the proposed recipient's age, health, and means of self-support; (3) the proposed payor's earning capacity and future earnings; (4) the duration of the marriage; and (5) the amount of property owned by the parties." *Rabie v. Ogaki*, 1993-NMCA-096, ¶ 5, 116 N.M. 143, 860 P.2d 785; *see also* § 40-4-7(E). "The actual need of the proposed recipient is a focal consideration in determining whether to order spousal support." *Clark*, 2014-NMCA-030, ¶ 7. "Whether to order spousal support, how much to order, and the duration of the order are within the sound discretion of the district court." *Rabie*, 1993-NMCA-096, ¶ 5.

**{24}** Under these facts, we conclude that the district court's award of spousal support was supported by substantial evidence and was not an abuse of discretion. Here, the district court ordered Husband to pay $1,300 monthly for spousal support. This determination was based, in part, on the district court's finding that Husband, although unemployed, "testified that his capable wages are $120,000 per year," and that Wife did not work during most of the marriage, and her income capacity was limited "because she has not held regular employment in over twenty years." This finding established the economic imbalance between Husband and Wife and further established that Wife had a "reasonable need for spousal support based on the totality of the circumstances." In making this award, the district court also considered the age and health of the parties, Wife's ability to be self-supporting—"Wife is currently doing odd jobs to earn money"— and the duration of the marriage, twenty-five years.

**{25}** Overall, it readily appears from our review of the record that the district court properly considered the evidence presented and the statutory requirements, and its decision on spousal support was consistent with the facts of this case. *See Clark*, 2014-NMCA-030, ¶ 8. Accordingly, we cannot conclude that the district court abused its discretion in awarding spousal support. Husband's remaining argument—that the amount of spousal support imposes a financial hardship on him—does not render the award inappropriate. *See, e.g.*, *Talley v. Talley*, 1993-NMCA-003, ¶ 16, 115 N.M. 89, 847 P.2d 323 (upholding an award of indefinite spousal support, even though the payor's remaining income would not support his normal monthly expenses).

## IV. Allocation of Assets

**{26}** Husband argues that the district court erred in its characterization, allocation, and division of certain assets. We note at the outset that in our review of the district court's

findings of fact, we do not reweigh the evidence but instead decide whether each challenged finding was supported by substantial evidence, indulging every reasonable inference in favor of the district court's disposition. *Wisznia v. N.M. Hum. Servs. Dep't*, 1998-NMSC-011, ¶ 10, 125 N.M. 140, 958 P.2d 98. "As a reviewing court we do not sit as a trier of fact; the district court is in the best position to resolve questions of fact and to evaluate the credibility of witnesses." *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. "[W]hen there is a conflict in the testimony, we defer to the trier of fact." *Buckingham v. Ryan*, 1998-NMCA-012, ¶ 10, 124 N.M. 498, 953 P.2d 33.

## A    Valuation of the Marital Residence

**{27}**    Husband argues the district court erred in its valuation and disposition of the marital residence. "Substantial evidence has been stated to be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lucas v. Lucas*, 1980-NMSC-123, ¶ 12, 95 N.M. 283, 621 P.2d 500 (internal quotation marks and citation omitted). Here, substantial evidence supports the district court's valuation of the community home.

**{28}**    First, we note that Husband does not sufficiently develop an argument about the district court's allocation of the marital property to Wife, so we do not address any dispute about its allocation. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)). We also note that while Husband claims the district court erred by previously "prohibiting appraisals of the property," he allowed Wife's appraiser, Dean Zantow, to testify about the value of the marital home. Moreover, Husband fails to refer us to the record where the district court made this order or to any order of the district court by which the district court barred testimony of an appraiser regarding the value of the marital home. We therefore do not address this contention because "[i]t is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." *Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 (internal quotation marks and citation omitted).

**{29}**    Instead, we address Husband's main contention regarding the district court's valuation of the home. Husband claims in his briefing that he "opined" that the home was valued at approximately $370,000, compared to Mr. Zantow's appraisal of $230,000. Our review of the record reveals that Husband did not "opine" on the value of the home and instead explained to the district court that he did not feel as if he had an opportunity to testify as to the value of the marital residence. Again, as to this claim, we remind Husband that "[i]t is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." *Id.* (internal quotation marks and citation omitted). Thus, Husband's main argument is that the district court abused its discretion in its decision to ultimately value the home at $230,000, agreeing with Mr. Zantow's appraisal.

**{30}**   In reviewing whether substantial evidence supports the district court's decision to value the marital home at $230,000, "[t]he question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *N.M. Tax'n & Revenue Dep't v. Casias Trucking*, 2014-NMCA-099, ¶ 20, 336 P.3d 436 (internal quotation marks and citation omitted). Here, there is substantial evidence to support the district court's valuation.

**{31}**   To determine the value of the marital home, the district court heard testimony from Mr. Zantow, a professional residential real estate appraiser with experience in appraisals since 1979. The district court found that Mr. Zantow was thorough in his valuation: he visited the property, analyzed the housing market, and compared similar houses that were sold. The district court further found Mr. Zantow's appraisal and testimony "credible and reasonable," and no other appraisals of the home were presented to the district court. Based on the evidence presented at trial—including the only appraisal presented to the court—substantial evidence exists to affirm the district court's decision to value the marital residence at $230,000.

## B.   Wife's Vanguard Account[2]

**{32}**   Husband argues that the district court erred by characterizing Wife's Vanguard retirement account as separate property rather than partial community property. Husband contends that even though Wife began contributing to the Vanguard retirement account before their marriage in 1991,[3] the account should not be characterized as Wife's separate property because Wife contributed to her Vanguard account for four years, from 1991 to 1995, during the marriage. This, Husband contends, does not support the district court's finding that Wife's Vanguard account was separate property. However, Husband fails to provide authority to support his position that Wife's Vanguard account was at least partially community property because of the overlap of contributions.

**{33}**   Instead, Husband only references *Dorbin v. Dorbin*, 1986-NMCA-114, ¶ 29, 105 N.M. 263, 731 P.2d 959, for the definition of apportionment: "a legal concept that is properly applied to an asset acquired by married people 'with mixed monies'—that is, partly with community and partly with separate funds." Husband argues that the Vanguard account was subject to a *Dorbin* analysis. However, Husband does not sufficiently develop an argument about whether the district court failed to analyze the

---

2We note that as to this asset, Husband seems to make two distinct arguments as to why the district court erred: (1) that the Vanguard account was partially community property and should have been characterized as such, which we address in the body of this memorandum opinion; and (2) that the Vanguard account was wrongfully included in the district court's equalization computation despite the account being depleted. As to this latter argument, our review of the record reveals that the district court determined that the Vanguard account was Wife's separate property, awarded the account to Wife as her separate property, and did not include it amongst those assets the court divided in attempting to equalize the parties' community property and debts. A careful review of the district court's equalization schedule set out in the Order reveals that this asset is not listed, and was, therefore, not considered by the district court in making its equalization computation. Consequently, we will not further address this argument.
3Wife contributed to the Vanguard Retirement account from 1985 to 1995.

Vanguard account under *Dorbin.* Without a sufficiently developed argument related to this issue by Husband, we do not address it. *See Elane Photography, LLC*, 2013-NMSC-040, ¶ 70 ("We will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)). "[W]e review substantial evidence claims only if the appellant apprises the Court of all evidence bearing on the issue." *Chavez v. S.E.D. Lab'ys*, 2000-NMCA-034, ¶ 26, 128 N.M. 768, 999 P.2d 412, *aff'd in part, rev'd in part*, 2000-NMSC-034, ¶ 24, 129 N.M. 794, 14 P.3d 532. Consequently, we will not consider this argument further.

## C.    Bank of America Account

**{34}**    Husband argues that the district court erred in finding that Husband's Bank of America account had a balance of $7,805 based on his testimony that the account balance would be less after various payments were made. We review for an abuse of discretion. *See Arnold v. Arnold*, 2003-NMCA-114, ¶ 6, 134 N.M. 381, 77 P.3d 285.

**{35}**    Husband testified that the balance in his Bank of America account, after making various payments, will reflect a balance of $0 after every month. While Husband relies on his testimony for the accurate balance of the Bank of America account, he does not cite to the record where he presented evidence, other than his testimony that the balance was other than $7,805. The district court relied on the trial exhibit of the Bank of America bank statement rather than Husband's testimony. We see no error with the district court's finding because "[i]t is for the trier of fact to weigh the evidence, determine the credibility of witnesses, reconcile inconsistent statements of the witnesses, and determine where the truth lies." *Jaynes v. Wal-Mart Store No. 824*, 1988-NMCA-076, ¶ 8, 107 N.M. 648, 763 P.2d 82; *see also Skeen*, 2009-NMCA-080, ¶ 37 (stating that, when the district court hears conflicting evidence, "we defer to its determinations of ultimate fact, given that we lack opportunity to observe demeanor, and we cannot weigh the credibility of live witnesses").

## D.    Bank of America IRA Equalization

**{36}**    Husband argues that the district court characterized Wife's Bank of America IRA as community property but failed to allocate the IRA in its final equalization. On this issue, we agree with Husband. We review the district court's division of community property for an abuse of discretion. *See Arnold*, 2003-NMCA-114, ¶ 6. While the district court indeed concluded the Bank of America IRA was community property, it did not allocate this account to either Husband or Wife and failed to specifically list the IRA in its equalization chart, dividing the interest. Under New Mexico law, the district court is required to equally divide the community property between divorcing parties. *Irwin v. Irwin*, 1996-NMCA-007, ¶ 10, 121 N.M. 266, 910 P.2d 342. Thus, because the district court failed to divide what it deemed to be community property, it abused its discretion. We remand this issue for the district court's division of Wife's Bank of America IRA.

## E.    Student Loan Debt Characterization

**{37}** Last, we briefly dispose of Husband's challenge to the district court's characterization of the student loan for their daughter, Victoria, for which he cosigned during the marriage. Although Husband contends that the district court ignored the "statutory definitions and language of community versus separate debt," he does not provide either definition or develop any analysis of how the district court's ruling was contrary to law. We will not address this argument without a sufficiently developed argument. *See Elane Photography, LLC*, 2013-NMSC-040, ¶ 70 ("We will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)).

**CONCLUSION**

**{38}** For the reasons stated above, we affirm the district court on all issues except the issue of Wife's Bank of America IRA. As to that issue, we remand this case to the district court with instructions that the district court resolve the conflict between its finding that Wife's Bank of America IRA is community property but failing to allocate the IRA to either party and omitting it from the equalization chart.

**{39}   IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**